PEOPLE v WOODFORK

PEOPLE v LANGSTON

OPINION OF THE COURT

1. CRIMINAL LAW—EVIDENCE—STATEMENTS OF CODEFENDANTS—CON-
   SPIRACY—CONCERT OF ACTION.

   Admissions and statements of a codefendant are admissible
   against another defendant, even in the absence of a charge of
   conspiracy, provided there is sufficient independent evidence of
   a concert of action between the defendants; therefore state-
   ments of one codefendant, who did not testify, were properly
   admissible against the other codefendant where there was
   evidence aliunde of a conspiracy and the statements were made
   during its course.

2. CRIMINAL LAW—INSANITY—BURDEN OF PROOF.

   The prosecution must prove that the defendant was sane beyond
   a reasonable doubt when the question of the defendant's sanity
   is at issue.

3. CRIMINAL LAW—INSTRUCTIONS TO JURY—INSANITY—BURDEN OF
   PROOF.

   The jury is presumed to have followed the erroneous instruction
   when several instructions are imparted to the jury, some
   proper and some incorrect; however, the trial court in a crimi-
   nal case did not commit reversible error in instructing the jury
   that it is "the duty of the prosecution to prove the sanity of the
   respondent by at least a fair preponderance of the evidence"
   where the other instructions, coming before and after the
   acknowledged misstatement, as well as the entire charge, when
   read as a whole, adequately apprised the jurors of their duty
   and where the defendant, by failing to object to the contested
   instruction or to assert any need to clarify what the jury had
   been told, indicated his satisfaction that the instructions, when

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law §§ 118, 132.
[2] 21 Am Jur 2d, Criminal Law §§ 50–53.
[3–5] 21 Am Jur 2d, Criminal Law §§ 45, 53.

given, adequately apprised the jurors of the law; any error was harmless.

Dissent by Adams, J.

4. Criminal Law—Instructions to Jury—Erroneous Instructions.

*The remedial impact upon the jury of a correct statement of law embodied within a discussion which the trial court has explicitly described as defendant's theory of the case is not sufficient to rectify a subsequent erroneous statement of law made by the trial court itself.*

5. Criminal Law—Insanity—Instructions to Jury—Erroneous Instructions.

*An erroneous statement of law regarding the quantum of proof required to prove a defendant sane made by a trial judge in his charge to the jury and never corrected was directed to the very essence of the case and requires a reversal even though not objected to; where conflicting instructions are given, one erroneous and the other without error, it may be presumed that the jury followed that instruction which was erroneous.*

Appeal from Genesee, Ollie B. Bivins, Jr., J. Submitted Division 2 April 10, 1973, at Lansing. (Docket Nos. 10692, 10648.) Decided June 25, 1973. Leave to appeal denied as to Langston, 390 Mich 801.

George Woodfork and Calvin Langston were convicted of first-degree murder and armed robbery. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, and *Donald A. Kuebler,* Chief, Appellate Division, for the people.

*Biesman & Megdell,* for defendants on appeal.

Before: Fitzgerald, P. J., and J. H. Gillis and Adams,* JJ.

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

J. H. GILLIS, J. Defendants, George Woodfork and Calvin Langston, were convicted in a joint jury trial of first-degree murder and armed robbery.[1] They appeal raising separate issues.

At about 2 p.m. on December 31, 1969, two men entered a grocery in Flint, Michigan. One man produced a rifle, customers were ordered to lie on the floor, and one of the pair opened the cash register. Shots were fired; the proprietor was killed.

Maria Hopkins testified she had been babysitting at a nearby home that day when defendants arrived at 2:30 p.m. She was permitted to testify over defense objection that defendant Langston stated, "[T]hey had robbed the store"; that defendant Woodfork directed another at that scene to go to the store to "see what was happening"; and that defendant Woodfork stated, "[T]hey only got three dollars".

Defendant Woodfork contends the admission of Langston's statements violated the principles of *Bruton v United States,* 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968). We disagree.

It is well settled that admissions and statements of a codefendant are admissible against another defendant, even in the absence of a charge of conspiracy, provided there is sufficient independent evidence of a concert of action between the defendants. *Fuentes v United States,* 283 F2d 537 (CA 9, 1960). The statements attributed to Langston, who did not testify, were admissible against defendant Woodfork because there was evidence, *aliunde,* of a conspiracy, and the statements were made during its course. Thus, *Bruton v United States, supra,* where the admission of a nontestify-

---

[1] MCLA 750.316; MSA 28.548, and MCLA 750.529; MSA 28.797, respectively.

ing codefendant's in-custody confession was held
error, is distinguishable. In such a case, any com-
mon plan or scheme to commit a crime and suc-
cessfully escape capture is terminated when a
codefendant is taken into custody. See *Kay v
United States,* 421 F2d 1007 (CA 9, 1970). See also
*People v Stewart,* 46 Mich App 282 (1973).

Defendant Langston claims error in the trial
court's jury instructions relative to the defense of
insanity. The error occurred when the trial court
told the jury:

"Where there is any evidence in the case by the
respondent which tends to show that at the time of the
commission of the offense he was laboring under either
permanent or temporary insanity, *it then becomes the
duty of the prosecution to prove the sanity of the
respondent by at least a fair preponderance of the
evidence."* (Emphasis supplied.)

While it is true that the prosecution must *at
least* prove a defendant claiming an insanity de-
fense to be sane by a preponderance of the evi-
dence, that alone would not satisfy the state's
burden. The prosecution must prove, in such an
instance, that the defendant was sane beyond a
reasonable doubt. *People v Geiger,* 10 Mich App
339 (1968); *People v Neumann,* 35 Mich App 193
(1971).

The trial court made that point clear in other
instructions:

"It is the further contention of defendant Calvin
Langston * * * that [he] was, at the time of the crime
alleged, criminally insane. That defendant, having in-
troduced competent evidence, including an expert opin-
ion and lay testimony, raising serious question of his
sanity, *it has become the burden of the prosecution to
establish beyond a reasonable doubt that Calvin Lang-*

*ston was in fact sane at the time of the crime alleged in the information.*

\*    \*    \*

"The burden of proof is upon the people to establish the respondents guilty beyond a reasonable doubt, *and to establish that Calvin Langston, Jr., was sane. The burden is not upon Calvin Langston to prove himself insane.*

\*    \*    \*

"Let me state, on insanity, the burden of proof. At the outset, there is a presumption in cases of this kind that the respondent Calvin Langston, was sane, but as soon as evidence is offered by the respondent to overthrow this presumption, the burden shifts and then *it rests upon the people to convince the jurors beyond a reasonable doubt of the respondent's sanity,* as that is one of the necessary conditions on which guilt may be predicated. When any evidence is given which tends to overthrow that presumption, the jurors should examine, weigh, and pass upon it with the understanding that, although the initiative in presenting the evidence is taken by the defense, *the burden of proof in this part of the case is upon the prosecution to establish the conditions of guilt."* (Emphasis supplied.)

The trial court then further instructed the jury that every element of the crime must be proven beyond a reasonable doubt in order to warrant conviction, and defined reasonable doubt, *not* in comparison to the preponderance of evidence test, but in terms of fair doubt based on reason and common sense.

We are convinced that the contested instruction which did not completely describe the prosecution's burden cannot be read out of context with the other repeated instructions that did accurately set out the relative burdens. Those other instructions, coming before and after the acknowledged misstatement, as well as the entire charge to the

jury, when read as a whole, adequately apprised
the jurors of their duty.

We note it has been said in other cases that:

"[W]hen several instructions are imparted to the jury,
some proper and some incorrect, the jury is presumed
to have followed the erroneous * * * ." See, *e.g., People
v Neumann, supra,* pp 195–196.

However, the contested instruction in this case
was only incorrect in that it did not completely
describe the prosecution's burden of proof. The
whole charge to the jury, and specifically those
portions quoted above, are *not necessarily incon-
sistent* with the contested instruction and serve to
augment and clarify what was intended.

We stress that our analysis is, in part, based on
the lack of objection to the contested instruction or
the assertion of any need to clarify what the jury
had been told. That acquiescence at the time the
case is submitted to the jury indicates the defend-
ant was satisfied the instructions, when given,
adequately apprised the jurors of the law. Any
error is harmless. See *People v Nelson,* 35 Mich
App 368, 370 (1971).

Affirmed.

Fitzgerald, P. J., concurred.

Adams, J. *(dissenting).* I agree with Judge Gillis
as to defendant Woodfork but disagree as to de-
fendant Langston.

I respectfully suggest that Judge Gillis is in
error when he quotes in his opinion, as part of the
trial judge's instructions, a portion of the trial
court's statement of defendant Langston's theory
of the case. In his charge to the jury, the trial
judge set forth what he clearly identified as "de-

fendant Calvin Langston's theory of the case". As
part of this theory the court discussed Langston's
claim regarding the defense of insanity, correctly
stating the people's burden of proof. However, the
judge commenced his statement of the claim with
the words, "It is the further contention of defend-
ant Calvin Langston, by his attorney Ivor R. Jones
* * * ", and concluded discussion of the theory by
declaring, "That is the theory of Mr. Langston". I
do not believe that the remedial impact upon the
jury of a correct statement of law embodied within
a discussion which the trial court has explicitly
described as *defendant's theory* of the case is
sufficient to rectify a subsequent erroneous state-
ment of law made by the trial court itself.[1]

After giving defendant's theory, the trial judge
correctly stated that the *burden* of proving defend-
ant sane is upon the people, but failed to specify
the *quantum* of proof required. He then gave the
correct instruction set forth in the excerpt from
the trial court's charge quoted by Judge GILLIS. It
will be noted that the correct instruction appears
at the beginning of the paragraph and that at the
end of this paragraph the trial judge allocates to
the prosecution the *burden* of establishing sanity
but again says nothing about the *quantum* of
proof. Immediately thereafter, the trial judge gave
the erroneous instruction quoted in Judge GILLIS'
opinion. This is the last time the court dealt with
the issue of insanity. There is language at two
subsequent places in the charge dealing with the
people's duty to prove defendants guilty beyond a
reasonable doubt but in neither instance does this
language relate to the specific issue of insanity.

[1] See *Milauckas v Meyer*, 1 Mich App 500, 508 (1965), in which this
Court stated: "The distinction may be made, therefore, between the
court's comments on the positions of the opposing parties and the
court's statements of the law".

The rule expressed in *People v Eggleston,* 186 Mich 510, 514–515 (1915), that "where conflicting instructions are given, one erroneous and the other without error, it may be presumed that the jury followed that instruction which was erroneous", has been consistently followed. *People v Kanar,* 314 Mich 242 (1946); *People v Clark,* 340 Mich 411 (1954); *People v Sangster,* 33 Mich App 712 (1971); *People v Schafer,* 36 Mich App 316 (1971). Furthermore, in *People v Geiger,* 10 Mich App 339 (1968), an instruction identical to that in the instant case was held to be reversibly erroneous despite the fact that a correct instruction had previously been given.

In *People v Neumann,* 35 Mich App 193 (1971), this Court reversed and remanded the case due to an erroneous insanity instruction *which was not objected to at trial.* The Court stated (p 196):

"Usually, instructional error will not occasion such 'manifest injustice' unless the incorrect instruction pertains to a basic and controlling issue in the case. In the case at bar, the erroneous charges dealt with the burden of proof with respect to insanity. *Any misstatement of the law on this point would be directed to the very essence of the case."* (Emphasis added.)

Similarly, in the present case the erroneous statement of law regarding the *quantum* of proof required to prove defendant sane was "directed to the very essence of the case".

I vote to affirm the conviction of George Woodfork. I vote to reverse the conviction of Calvin Langston and remand his case for a new trial.