PEOPLE v ADAMS

PEOPLE v DRINKWINE

1. BURGLARY—LESSER INCLUDED OFFENSES—INSTRUCTIONS TO JURY.

A trial court's refusal to instruct the jury in a trial for breaking and entering an occupied dwelling with intent to commit larceny on the possible lesser included offenses of attempted breaking and entering of an occupied dwelling with intent to commit larceny and breaking and entering of an unoccupied dwelling was not error where evidence at trial was uncontradicted that a completed breaking and entering took place in an occupied dwelling and that defendants entered, secured what goods they desired, and were seen outside the apartment in possession of those goods since there was no evidence adduced at trial to support the requested instructions (MCLA 750.110).

2. CRIMINAL LAW—LESSER INCLUDED OFFENSES—ATTEMPT—INSTRUCTIONS TO JURY.

Refusal to instruct on attempt as a lesser included offense is not error where the record shows that the completed offense has been committed and the jury could not reasonably have inferred that defendants did not go beyond the attempt stage.

3. CRIMINAL LAW—EVIDENCE—OUT-OF-COURT STATEMENTS—APPEAL AND ERROR—PRESERVING QUESTION—CONSTITUTIONAL RIGHT.

The failure of defense counsel to object to the testimony of a witness at trial regarding out-of-court statements reportedly made by a nontestifying codefendant does not automatically preclude review of this claim of error which raises the issue of defendant's constitutional right of confrontation.

REFERENCES FOR POINTS IN HEADNOTES

[1] 13 Am Jur 2d, Burglary §§ 67–72.
[2] 21 Am Jur 2d, Criminal Law §§ 40, 592, 614.
[3, 4] 29 Am Jur 2d, Evidence §§ 5, 14.
[5] 21 Am Jur 2d, Criminal Law §§ 107, 108.
[6, 7] 5 Am Jur 2d, Appeal and Error § 623.
[8] 5 Am Jur 2d, Appeal and Error § 756.

4. CRIMINAL LAW—EVIDENCE—OUT-OF-COURT STATEMENTS—HEARSAY
—COMMON ENTERPRISE.

A defendant was not denied a fair trial when an out-of-court
statement of a nontestifying codefendant was introduced to
implicate him where defendants were not charged with conspir-
acy but an examination of the facts revealed that a mutual
agency or common enterprise existed because there is an
exception to the hearsay rule in conspiracy cases where there is
proof of common enterprise or mutual agency; moreover, the
statements made by the codefendant and testified to by the
witness could not be construed as crucial to the defendant's
conviction or devastating to his claim of innocence where
independent evidence and eyewitness testimony supported de-
fendant's conviction.

5. CRIMINAL LAW—DEFENSES—INTENT—INTOXICATION—INSTRUCTIONS
TO JURY.

An instruction to a jury that if the jury found that defendants
formed their intent to commit the crime with which they were
charged before they became intoxicated, intoxication would not
shield them from later criminal responsibility was not error
where there was evidence from which the jury could have
found that defendants were intoxicated at the time of the
offense, but that specific intent was formed prior to intoxica-
tion.

6. CRIMINAL LAW—INSTRUCTIONS TO JURY—APPEAL AND ERROR—PRE-
SERVING QUESTION.

The Court of Appeals will not consider claims of error based on
alleged erroneous instructions to the jury when there was no
objection at trial unless necessary to prevent manifest injustice.

7. CRIMINAL LAW—INSTRUCTIONS TO JURY—APPEAL AND ERROR.

Instructions to the jury are to be examined as a whole to
determine whether an instruction failed to state the applicable
law or prejudiced the defendant.

8. CRIMINAL LAW—ARGUMENT OF COUNSEL—PROSECUTOR'S REMARKS—
QUOTING LAW TO JURY.

It is improper for a prosecutor to quote the law to a jury, but an
occasional reference to the law may be necessary to argue the
theory of a case, and where any erroneous impressions that a
prosecutor's remarks might have created in the minds of the
jurors were dispelled by the court's instructions, there was no
error.

Appeals from Genesee, Anthony J. Mansour, J. Submitted Division 2 June 5, 1973, at Lansing. (Docket Nos. 15189, 11765.) Decided July 26, 1973.

Daniel J. Adams and George Drinkwine were convicted of breaking and entering an occupied dwelling with intent to commit larceny. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, and *Donald A. Kuebler,* Chief, Appellate Division, for the people.

*Carl H. Leiter,* for defendant Adams.

*William A. Shaheen, Jr.,* for defendant Drinkwine.

Before: HOLBROOK, P. J., and DANHOF and ADAMS,* JJ.

DANHOF, J. Defendants were tried jointly and convicted by a jury of breaking and entering an occupied dwelling with intent to commit larceny. MCLA 750.110; MSA 28.305. On April 14, 1971, defendant Adams was sentenced to a prison term of 7-1/2 to 15 years; defendant Drinkwine was sentenced to a prison term of 12-1/2 to 15 years. Defendant Drinkwine filed a timely claim of appeal. Defendant Adams' motion for appointment of counsel, filed April 3, 1972, was denied by the trial court. On appeal, this Court treated the motion as a complaint for superintending control and granted defendant Adams' request on July 14, 1972. On September 27, 1972, these appeals were

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

consolidated for review. We affirm the convictions of both defendants.

Defendants first claim that the trial court erroneously refused to instruct the jury on the possible lesser included offenses of attempted breaking and entering of an occupied dwelling with intent to commit larceny and breaking and entering of an unoccupied dwelling. The trial court instructed the jury on three possible verdicts as to each defendant: Guilty of breaking and entering an occupied dwelling with intent to commit larceny, guilty of entering without permission, and not guilty. The evidence at trial was uncontradicted that a completed breaking and entering took place in an occupied dwelling; that defendants entered, secured what goods they desired, and were seen outside the apartment in possession of those goods. Since there was no evidence adduced at trial to support the requested instructions, the trial court's refusal to so instruct was not error. *People v Simpson,* 5 Mich App 479, 486; 146 NW2d 828, 831 (1966); *People v Stram,* 40 Mich App 249, 253; 198 NW2d 753, 756 (1972); *People v Gardner,* 43 Mich App 574, 576; 204 NW2d 272, 273 (1972). Where the record shows that the completed offense has been committed and the jury could not reasonably have inferred that defendants did not go beyond the attempt stage, it is not error to refuse an instruction on attempt. *People v Tyrone Williams,* 38 Mich App 146, 149; 195 NW2d 771, 772 (1972).

Defendant Drinkwine claims that he was denied a fair trial when an out-of-court statement of the nontestifying codefendant Adams was introduced to implicate him. He cites *Bruton v United States,* 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968). This verbal statement concerning a contemplated breaking and entering was reportedly made by

defendant Adams to Mr. Lloyd Decker in the presence of defendant Drinkwine and was subsequently testified to at trial by Decker. No objection to the testimony of witness Decker was made by trial counsel. This does not, however, automatically preclude review of this claim which raises the issue of defendant's constitutional right of confrontation. *People v Shirk,* 383 Mich 180, 194; 174 NW2d 772, 780 (1970). In *Dutton v Evans,* 400 US 74; 91 S Ct 210; 27 L Ed 2d 213 (1970), the Supreme Court declined to reverse a conviction where a hearsay statement of a coconspirator was admitted into evidence. It was pointed out that there was a statutory exception to the hearsay rule in Georgia which allowed admission of an out-of-court statement by a coconspirator. Moreover, the Court in *Dutton* found that the statement testified to by a witness under oath and subject to cross-examination did not involve evidence which was "crucial" or "devastating". 400 US 87; 91 S Ct 219; 27 L Ed 2d 226. In Michigan there is an exception to the hearsay rule "in conspiracy cases where there is proof of a common enterprise or a mutual agency". *People v Trilck,* 374 Mich 118, 122; 132 NW2d 134, 137 (1965). While defendants in the instant case were not charged with conspiracy, an examination of the facts reveals that a mutual agency or common enterprise existed. Moreover, the statements which were made by defendant Adams and testified to by witness Decker cannot be construed as crucial to defendant Drinkwine's conviction or devastating to his claim of innocence. Decker testified that defendant Drinkwine was present when the statements were made by Adams, that he thought defendant Drinkwine understood, but that he did not say too much. In addition, Decker could not remember whether defendant Drinkwine invited him to par-

ticipate in the crime charged. Defense counsel had full opportunity and did in fact cross-examine Decker about this conversation. Independent evidence placed defendant Drinkwine near the scene of the crime. There was eyewitness testimony that he was in possession of the guns after the breaking and entering and further testimony that he delivered these guns to Cynthia Cromwell. Finally, witness Decker testified that he encountered defendant Drinkwine on the street and that Drinkwine himself said that he and defendant Adams "had tried and had failed at the B & E, and that Danny Adams was caught".

It is alleged that the trial court's instruction on intoxication was erroneous. The court gave four instructions on intoxication, the first two requested by the defense, the latter two by the prosecution. It will suffice at this point to summarize those instructions as follows: (1) Whether defendants were so intoxicated as to be incapable of having the necessary specific intent was a question of fact for the jury; (2) The degree of intoxication must have been such that defendants did not know what they were doing, or if they did, that they did not know that they were doing it; (3) That the jury must find that defendants were so intoxicated at the time of the breaking and entering that they lacked intent to steal; (4) If the jury found that defendants formed their intent before they became intoxicated, intoxication would not shield them from later criminal responsibility. It is this last instruction which forms the basis of defendants' claim of error. We find no error. Defendants' reliance upon *People v Kelley,* 21 Mich App 612; 176 NW2d 435 (1970) is misplaced since in that case there was no claim or proof that defendant formed the requisite specific intent before

becoming intoxicated; rather, the instruction was found erroneous in that it could lead the jury to believe that intoxication is no defense when an accused becomes voluntarily intoxicated knowing that he has a propensity for criminal behavior while in that state. See 21 Mich App 624; 176 NW2d 440–441, footnote 17. In the case at bar, there was evidence by which the jury could have found that defendants were intoxicated at the time of the offense, but that specific intent was formed prior to intoxication.

Defendants also claim error in the trial court's instruction to the jury on the element of intent. Specifically, defendants refer to the following language:

"The question of intent is one that is hard to establish directly, because grown persons do not always disclose the object they have in view in any act in which they may indulge. And, you have to gather the intent from the character of the act and the circumstances surrounding it. But in connection with all this, unless the testimony satisfies you of something else, you are warranted in holding a party responsible for the natural, probable and legitimate consequences of his act.

"The intent may be presumed from the doing of the wrongful, fraudulent or illegal act, but this inference or presumption is not necessarily conclusive. The law presumes that every man intends the legitimate consequences of his acts. Wrongful acts, knowingly or intentionally committed, can be neither justified nor excused on the ground of innocent intent."

Defendants claim that the above language placed the burden upon them to overcome a presumption of intent. It must be pointed out that defense counsel not only did not object to the court's instructions, but indeed expressed satisfaction with them. Unless necessary to prevent manifest injus-

tice, this Court will not consider claims of error based on alleged erroneous instructions when there was no objection at trial. *People v Charles Jackson,* 21 Mich App 132, 133; 175 NW2d 41, 42 (1970). To determine whether an instruction failed to state the applicable law or prejudiced the defendant, instructions are to be examined as a whole. *People v Harper,* 43 Mich App 500, 504; 204 NW2d 263, 266 (1972). In *People v Pepper,* 389 Mich 317, 321; 206 NW2d 439, 441 (1973), similar instructions which "focused upon intent regarding the consequences of the act and never even considered the intent to do the act itself" were declared erroneous. However, the error of the trial court in *Pepper* was twofold: (1) The defense of accidental shooting was removed from the jury's consideration; (2) The instructions created a presumption of intent. These errors "had the cumulative effect of assuring defendant's conviction". 389 Mich 320; 206 NW2d 440. It was the first error, that of removing the defense of accidental shooting from jury consideration, which required reversal. In the instant case, defendants' main defense of intoxication was submitted to the jury with proper instructions. Moreover, the defense of intoxication and the element of intent were inextricably interwoven. Immediately following the language in the court's instruction upon which defendants allege error, there appears the following:

"So, then, what all this really means is that the last element that I discussed with you, the element of intent, is the element on which the parties have spent the most time during the course of the trial. And, the question of intent is raised as the intoxication defense applies to it.

"So, in this case, if you find that the defendants were so intoxicated that they were not able to form the necessary intent to commit the offense, and if you have

a reasonable doubt as to that necessary intent, then they must be acquitted. If, however, while still sober they formed the necessary intent and then voluntarily became intoxicated, then the defense does not apply.

"Now, if you find that they were so intoxicated, or otherwise find that there was not the sufficient intent proven, that is, the intent to commit a larceny in the place, then you will find that the defendants are not guilty of the offense charged in the Information, that is, the breaking and entering with intent to commit a larceny therein."

The instructions read as a whole did not shift to defendants the burden of proof on the element of intent and thus there was no manifest injustice.

Defendants contend that the prosecutor improperly argued and misstated the law to the jury regarding defendants' defense of intoxication. While it is improper for counsel to quote the law to the jury, nevertheless, an occasional reference to the law may be necessary to argue the theory of the case. *People v June,* 34 Mich App 313, 316; 191 NW2d 52, 54 (1971). Any erroneous impressions that the prosecutor's remarks might have created in the minds of the jurors was dispelled by the court's instructions on intoxication. Furthermore, the prosecutor's remarks were not so prejudicial as to cause the jury to suspend its own power of judgment. *People v Turner,* 41 Mich App 744, 747; 201 NW2d 115, 116 (1972).

Affirmed.

All concurred.