PEOPLE v HALL

Docket No. 49448. Submitted September 3, 1980, at Detroit.—Decided December 15, 1980.

Nathaniel Hall, Jr. was convicted of second-degree murder in Detroit Recorder's Court, Donald L. Hobson, J. The defendant appeals, alleging that: 1) the trial court erred in admitting into evidence photographs which depicted a bloodstained carpet of the entry hall where the homicide occurred, 2) he was prejudiced when a woman, believed to be the victim's mother, began to cry in the courtroom, 3) certain statements of a coconspirator were inadmissible hearsay and prejudicial, 4) testimony of a police officer at trial was highly prejudicial hearsay, and 5) the case should be remanded for an evidentiary hearing to determine whether his trial counsel should have insured the appearance at trial of individuals allegedly present when the robbery was planned. *Held:*

1. No error occurred in admitting into evidence photographs depicting the bloodstained carpet since the photographs were probative of the question whether robbers had entered the home and there was no intent to prejudice the jury.

2. No prejudice to defendant occurred because the woman cried in the courtroom in the presence of the jury.

3. Testimony of a coconspirator that another party received a

REFERENCES FOR POINTS IN HEADNOTES

[1] 40 Am Jur 2d, Homicide §§ 413, 416, 419, 453.

[2] 76 Am Jur 2d, Trial § 1105.
Manifestations of grief, crying, and the like by victim or family of victim during criminal trial as ground for reversal, new trial, or mistrial. 46 ALR2d 949.

[3-5] 16 Am Jur 2d (Rev), Conspiracy § 38.

[5] 75 Am Jur 2d, Trial § 147.

[6] 81 Am Jur 2d, Witnesses §§ 641, 643.

[7] 4 Am Jur 2d, Appeal and Error § 496.

[8] 4 Am Jur 2d, Appeal and Error § 475.
5 Am Jur 2d, Appeal and Error § 962.
56 Am Jur 2d, Motions, Rules, and Orders § 8.

[9] 56 Am Jur 2d, Motions, Rules, and Orders § 27.

[10] 56 Am Jur 2d, Motions, Rules, and Orders § 8.

telephone call indicating that the victim was dead was harmless at best since the victim's death had already been established by other evidence.

4. Testimony of a coconspirator that he and others had met with the defendant and the victim at a restaurant earlier on the evening of the homicide and discussed a robbery and borrowing of firearms was admissible as a statement made in furtherance of a conspiracy on independent proof of the conspiracy. There was evidence of a conspiracy independent of the restaurant meeting testimony.

5. The police officer's testimony concerning statements made to him by a coconspirator was admissible for the limited purpose of rehabilitating the coconspirator's credibility after a defense charge of recent fabrication.

6. The production of the requested witnesses could have materially aided the jury in resolving the question of the defendant's guilt. The defendant did not waive the issue of a requirement for an evidentiary hearing by failing to seek such a hearing before appeal. Because the issue questions the effective assistance of trial counsel, it would not be fair to require trial counsel to have sought such a hearing regardless of whether the judge would have granted it.

7. Michigan general court rules mandate that a motion to remand be granted if it identifies an issue sought to be reviewed on appeal and shows that a testimonial record must be developed to support the issue or that the issue should be initially decided by the trial judge.

Remanded for an evidentiary hearing.

V. J. BRENNAN, J., concurred in part and dissented in part. He would not remand the case for an evidentiary hearing since a Michigan court rule requires that a movant on a motion for remand submit affidavits in support of his allegations of fact. The defendant should have attached affidavits from the uncalled witnesses as to their testimony or the trial counsel as to factual circumstances asserted by the defendant. He concurs with the majority opinion as to the other issues raised by the defendant on appeal.

OPINION OF THE COURT

1. HOMICIDE — EVIDENCE — PHOTOGRAPHS.

The admissibility into evidence in a murder trial of photographs depicting a bloodstained carpet rests with the trial court's discretion and the court's decision to admit such photographs

into evidence will be upheld if the photographs were substantially necessary or instructive to show material facts or conditions and it does not appear that they were offered in an attempt to excite passion or prejudice.

2. HOMICIDE — TRIAL — PREJUDICE.

The crying, in the presence of the jury, of a woman believed to be the mother of a homicide victim does not constitute sufficient prejudice to the defendant to require reversal of his conviction.

3. CONSPIRACY — EVIDENCE — COCONSPIRATOR'S STATEMENTS — ADMISSIBILITY OF EVIDENCE — RULES OF EVIDENCE.

Evidence of a conconspirator's statements during the course and in furtherance of the conspiracy, on independent proof of conspiracy, is admissible into evidence (MRE 801[d][2][E]).

4. CONSPIRACY — EVIDENCE — COCONSPIRATOR'S STATEMENTS — ADMISSIBILITY OF EVIDENCE — RULES OF EVIDENCE.

Evidence of a coconspirator's statements may be admitted into evidence where the statements constitute a party admission which did not rise to the status of a confession (MRE 801[d][2][A]).

5. CONSPIRACY — EVIDENCE — COCONSPIRATOR'S STATEMENTS — ORDER OF PROOFS — RULES OF EVIDENCE.

The trial court in a trial for conspiracy may vary the order of proofs and admit a coconspirator's statements contingent upon later production of independent evidence of the basis for the conspiracy (MRE 801[d][2][E]).

6. EVIDENCE — CONSISTENT STATEMENTS — ADMISSIBILITY OF EVIDENCE.

Consistent statements of a witness are generally not admissible as substantive evidence, but they are allowed for the limited purpose of rebutting charges of recent fabrication.

7. APPEAL — MOTIONS AND ORDERS — MOTION TO REMAND — COURT RULES.

The granting by the Court of Appeals of a motion to remand is mandated by Michigan court rules if it identifies an issue sought to be reviewed on appeal and shows that a testimonial record must be developed to support the issue or that the issue should be initially decided by the trial judge (GCR 1963, 817.6[1]).

8. APPEAL — MOTIONS AND ORDERS — MOTION TO REMAND — TIME
   LIMITATIONS — COURT OF APPEALS DISCRETION.
   The Court of Appeals has the discretion to grant a motion to
   remand which is filed late.

PARTIAL CONCURRENCE AND PARTIAL DISSENT BY V. J. BRENNAN, J.

9. APPEAL — CRIMINAL LAW — MOTIONS AND ORDERS — REMANDS FOR
   EVIDENTIARY HEARINGS — AFFIDAVITS — COURT RULES.
   *A defendant who makes a motion in the Court of Appeals for a
   remand for an evidentiary hearing is not entitled to the re-
   mand where no affidavits setting forth specific allegations have
   been filed (GCR 1963, 817.1).*

10. MOTIONS AND ORDERS — SETTING ASIDE GUILTY PLEA — TIME
    LIMITATIONS.
    *There is no time limitation on a defendant's filing a motion to set
    aside a guilty plea.*

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Edward Reilly Wilson,* Prin-
cipal Attorney, Appeals, and *Gary Dettloff,* Assis-
tant Prosecuting Attorney, for the people.

*Arthur H. Landau,* for defendant on appeal.

Before: D. C. RILEY, P.J., and J. H. GILLIS and
V. J. BRENNAN, JJ.

J. H. GILLIS, J. Defendant was charged with first-
degree felony murder, MCL 750.316; MSA 28.548.
He was convicted of second-degree murder, MCL
750.317; MSA 28.549, and sentenced to 25 to 40
years imprisonment. This appeal is brought as of
right. GCR 1963, 806.1.

Defendant raises six issues on appeal and re-
quests remand for an evidentiary hearing on the
question of whether he was denied effective assis-
tance of counsel with regard to his attorney's
failure or refusal to subpoena certain witnesses.

The testimony of the witnesses who were pres-

ent at trial indicates that during the evening of November 20, 1978, Eddie Godlove answered a knock at his door and was confronted with a male and a female. The man grabbed Godlove, announced a stick-up, and hit Godlove with a gun when Godlove began to yell. The gun discharged, hitting the female accomplice (Shirley Howard) in the neck. The man fled, leaving the woman lying on the floor. She died sometime later.

Mr. Godlove could not identify the man involved in the attempted robbery. Jessie Tolbert testified, however, that he and defendant's brother, Ronald Hall, had joined six other people (including defendant and Ms. Howard) in a Detroit restaurant earlier in the evening of November 20, 1978, in an attempt to borrow some guns owned by defendant and a friend. Tolbert intended to rob Godlove but was unable to persuade defendant and his friend to give up their firearms. However, Tolbert testified that the discussion soon turned to how such a robbery could be committed. Apparently, unnamed members of the group decided that a female should knock on Godlove's door and one or more of the men would rush in as soon as the door was opened.

Tolbert and Ronald Hall left the restaurant with two other members of the group (Daisy Brewster and Bunny). Later, defendant's brother received a phone call at Tolbert's house which prompted the two men to drive past Godlove's home "to see if the girl was dead". Because numerous police officers were at the Godlove home, Tolbert and Ronald Hall merely drove by and returned to Tolbert's home. Several days later, however, Tolbert asked defendant what had happened and was told that Ms. Howard had knocked on Godlove's door, the door was opened, and defendant followed Howard

and Bob Fierson into the home and saw Fierson
attempt to hit Godlove with the gun. Howard was
shot when the gun inadvertently discharged. De-
fendant and Fierson immediately ran out, leaving
Howard lying on the floor. Fierson was one of the
men who was with the group in the restaurant
when Tolbert, Ronald Hall, Ms. Brewster and
Bunny left.

Defendant's claim that the trial court erred in
admitting into evidence photographs of the God-
love entry hall which depicted a bloodstained car-
pet is rejected. The admission of such photographs
rests with the trial court's discretion. *People v
Eddington,* 387 Mich 551; 198 NW2d 297 (1972).
The court's decision will be upheld if the photo-
graphs were "substantially necessary or instruc-
tive to show material facts or conditions" and it
does not appear that they were offered in an
attempt to "excite passion or prejudice". *People v
Falkner,* 389 Mich 682, 685; 209 NW2d 193 (1973).
We find that no error occurred here. The photo-
graphs were probative of the question whether the
"robbers" had actually entered the home, as was
stated by Mr. Godlove. Because they depicted only
a bloodstained carpet, we do not find an intent to
prejudice the jury.

We also find unpersuasive defendant's argument
that he was prejudiced when a woman began to
cry in the courtroom. Although the woman was
believed to be Ms. Howard's mother, we find no
reversible error in the event. Defendant cites no
authority in support of his claim and we have
found nothing which requires reversal on this
ground.

Defendant's challenge to Tolbert's testimony
that he (Tolbert) and Ronald Hall drove by God-
love's house to see if Ms. Howard was dead is

premised on the hearsay rule. Defendant argues that Tolbert's testimony that Ronald Hall received a phone call after which Tolbert and Hall drove by Godlove's house "[t]o see what was said really happened * * * to see if the girl was dead", constitutes hearsay admitted to prove the truth of the matter asserted. This argument is unavailing. The testimony indicated only that someone called defendant's brother at Tolbert's house and told him that Shirley Howard had been killed during the robbery attempt at Godlove's house. This may have been hearsay, but its admission into evidence was harmless at best; Ms. Howard's death had already been established by other evidence.

The only potentially prejudicial inference flowing from the challenged testimony was that defendant had made the telephone call. We do not deem such an inference likely enough to require reversal. Nothing in the testimony made it more reasonable to infer that the caller was defendant instead of one of the other individuals involved.

Defendant also argues that Tolbert's testimony as to the restaurant meeting was inadmissible hearsay which was highly prejudicial to the defendant. The prosecutor argues that the statements were made in furtherance of a conspiracy and were thus admissible under MRE 801(d)(2)(E). We agree.

The cited court rule permits the admission into evidence of coconspirator's statements "during the course and in furtherance of the conspiracy on independent proof of the conspiracy". This exception to the hearsay rule was applied to cases in which no conspiracy had been charged, before the enactment of the Michigan Rules of Evidence, *People v Stewart,* 46 Mich App 282, 285; 207 NW2d 907 (1973), *aff'd* 397 Mich 1; 242 NW2d 760

(1976), *modified* 400 Mich 540; 256 NW2d 31 (1977), *People v Shepherd,* 63 Mich App 316, 322; 234 NW2d 502 (1975), *People v Adams,* 48 Mich App 595, 599; 210 NW2d 888 (1973), and *People v Woodfork,* 47 Mich App 631, 633; 209 NW2d 829 (1973). We see no policy reason why it cannot continue to be applied in such cases.

Our review of the record discloses prima facie evidence of a conspiracy independent of the restaurant meeting testimony. Mr. Godlove's testimony established that two people attempted to rob him and that one was shot in the process. The acts of the then unknown robbers circumstantially established that they were engaged in a concert of action. Tolbert's testimony reiterating defendant's admitted participation in the robbery attempt establishes his connection to the conspiracy or concert of action. This was an essential element of the independent proofs. It was admissible under MRE 801(d)(2)(A), as a party admission which did not rise to the status of a confession. See, *e.g., People v Porter,* 269 Mich 284, 289-291; 257 NW 705 (1934). See, also, *People v Moncure,* 94 Mich App 252, 257-261; 288 NW2d 675 (1979).

Tolbert's testimony in this regard was admitted after he testified to the restaurant meeting. While some authority exists for the proposition that the independent proof of the conspiracy must be offered and admitted *before* the coconspirator's statements can be admitted, *People v Scotts,* 80 Mich App 1; 263 NW2d 272 (1977), we adhere to the rule that "[t]he order of presentation of the proofs was unimportant, as it is clear that [the] trial court may vary the order of proofs and admit the coconspirator's statements contingent upon later production of the independent evidence required under MRE 801(d)(2)(E). See MRE 104(b)."

*People v Losey,* 98 Mich App 189; 296 NW2d 601 (1980). In the case at bar, the sum of the proofs established an independent basis for the conspiracy. Tolbert's testimony as to the restaurant meeting was, therefore, properly admitted into evidence.

Following Tolbert's testimony at trial, Police Officer Smith, who interviewed Tolbert and took his statement, was examined. Defendant now claims that Officer Smith's testimony concerning what Tolbert told him was highly prejudicial hearsay testimony. This issue was preserved below by defense counsel's objection.

The officer's testimony established that, although not included in the written statement signed by Tolbert, he (Tolbert) did tell the officer about the restaurant meeting. Defendant cites no authority in support of his argument on appeal; the prosecutor argues that the challenged testimony falls within the MRE 803(3) "state of mind" exception to the hearsay rule.

MRE 803(3) is inapplicable here because it relates only to the "declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain and bodily health)". Officer Smith's testimony concerned only whether Tolbert told Smith about the restaurant meeting at the time the signed statement was made. A careful analysis of the officer's testimony reveals that it was admitted either to bolster the credibility or weight of Tolbert's testimony or to rebut perceived charges of recent fabrication in response to influence being brought to bear on Tolbert.

Tolbert communicated his story to the police when he was arrested on a capias warrant on or about August 1, 1979. Tolbert testified at trial that

he believed defendant's brother and some other people called the police and told them where to find Tolbert, who was hiding because he knew an outstanding warrant existed. After his arrest, he told the police that he knew who had killed Ms. Howard, in an effort to "do" to Ms. Howard's accomplices what they had done to him. Tolbert also testified that he had been in an altercation with defendant because Tolbert sold some "dummy" dope which he told the buyer came from defendant. Thereafter, approximately five days before Tolbert's arrest, defendant and five friends, all but one of whom were armed, beat Tolbert. Finally, Tolbert testified that he discussed the attempted robbery during which Ms. Howard was killed with the police in an attempt to get a good deal with regard to the capias warrant.

Tolbert's testimony as to the restaurant meeting was attacked by defense counsel because Tolbert's signed statement contained no mention of the subject. The officer was asked whether Tolbert had mentioned the meeting in an apparent effort to convince the jury that Tolbert had not fabricated the testimony *after* his first conversation with the police on August 1, 1979. Thus, the prosecutor sought to introduce evidence of a prior consistent statement to rehabilitate Tolbert's credibility by countering the effect of the signed (prior inconsistent) statement containing no mention of the restaurant meeting.

In *Brown v Pointer,* 390 Mich 346; 212 NW2d 201 (1973), a defendant's testimony was impeached by the introduction of a written affidavit. Following the defendant's further testimony that the statements in the affidavit were untrue, another witness testified that defendant had made a prior statement consistent with his trial testimony. On

appeal, the Michigan Supreme Court noted that, although consistent statements of a witness are generally not admissible as substantive evidence, they are allowed for the limited purpose of rebutting charges of recent fabrication.

"It has been said, however, that they are often 'allowed a limited admissibility for the purpose of supporting the credibility of a witness, particularly to show that a witness whose testimony has allegedly been influenced told the same story before the influence was brought to bear.' McCormick, Evidence (2d ed), § 251, p 604. The authors of this recent revision of McCormick assert that the trend of decision supports the admission of consistent statements; they reason that '[t]he witness can be cross-examined fully. No abuse of prepared statements is evident. The attack upon the witness has opened the door.' McCormick, Evidence, *op cit.*" 390 Mich 346, 351-352.

In *Brown,* the Supreme Court upheld the lower court's ruling admitting evidence of the prior consistent statement. Our review of the record in the instant case leads us to a similar conclusion. When Tolbert first spoke to Officer Smith, he allegedly told Smith about the restaurant meeting. Because that meeting was not noted in the signed statement memorializing Tolbert's interview with Smith, Tolbert's credibility was attacked by the implication that he had fabricated that portion of his testimony after his first meeting with Smith, in an attempt to secure a better deal with regard to the capias warrant. Under these circumstances, Smith's testimony was admissible, not as substantive evidence, but for the limited purpose of rehabilitating Tolbert's credibility after the defense charge of recent fabrication.

The final issue requiring discussion is defendant's remand request. The evidentiary hearing

requested by defendant is argued to be necessary
to determine whether defendant's trial counsel
should have insured the appearance at trial of the
individuals allegedly present in the restaurant
when the robbery was planned. Defendant alleges
that he was not there. Tolbert testified that he
was. Defendant stated at trial that he did not
participate in the attempted robbery or talk with
Tolbert about it after the fact. No one was able to
identify defendant as being at Godlove's house. It
thus appears that the production of the requested
witnesses could have materially aided the jury in
resolving the question of defendant's guilt.

Under *People v Ginther,* 390 Mich 436, 443; 212
NW2d 922 (1973), we remand for the hearing
requested by defendant. Implicit in this conclusion
is our finding that the issue was not waived by
defendant's failure to seek such a hearing before
appeal. Because the issue questions the effective
assistance of trial counsel, it would not be fair to
require trial counsel to have sought such a hearing
regardless of whether the judge would have
granted it. Further, GCR 1963, 817.6(1) mandates
that a motion to remand be granted if it "identifies
an issue sought to be reviewed on appeal, and
shows that a testimonial record must be developed
to support the issue or that the issue should be
initially decided by the trial judge". While the
mandatory nature of the rule is inapplicable here
for failure to file the motion within the time
provided, this Court has the discretion to grant a
motion to remand which is filed later in the appel-
late process. *People v McCall,* 403 Mich 858 (1978).

On remand, the trial court is to conduct an
evidentiary hearing and make findings on the
question whether trial counsel's failure to call as
witnesses some or all of the individuals allegedly
present at the restaurant while the robbery was

being planned deprived the defendant of the effective assistance of counsel and significantly affected the outcome of the trial.

Defendant's remaining allegation of error does not require discussion.

Remanded for proceedings consistent with this opinion. We retain jurisdiction.

D. C. RILEY, P.J., concurred.

V. J. BRENNAN, J. *(concurring in part and dissenting in part).* I concur with the majority opinion on the disposition of the six issues defendant raised on appeal. I must dissent, however, from the majority's disposition of the motion for remand.

GCR 1963, 817.1 requires that a movant on a motion for remand submit affidavits in support of his allegations of fact. The defendant, in his motion for remand, makes vague statements that witnesses not presented at trial because of the ineffective assistance of trial counsel would have changed the verdict as rendered by the jury. This Court has held in *People v Serr,* 73 Mich App 19, 26; 250 NW2d 535 (1976), that a defendant is *not* entitled to an evidentiary hearing where no affidavits setting forth specific allegations have been filed. Under GCR 1963, 817.1, defendant should have attached affidavits from the uncalled witnesses as to their testimony or the trial counsel as to factual circumstances asserted by defendant.

Since compliance with GCR 1963, 817.1 may have obviated the need to return this cause to the trial court for an evidentiary hearing as to the existence of uncalled witnesses, I do not feel *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973), applies. The defendant in *Ginther* appears to have

complied with any¯ pertinent court rules when seeking his remand and his allegations had been previously presented to the trial court.

When defendant's appellate counsel was appointed, he was not precluded from bringing a motion to remand, accompanied by the necessary affidavits, to move to set aside the guilty plea in the lower court. *Serr, supra,* 25, notes that there is no time limitation on defendant's filing to set aside a guilty plea. The absence of affidavits usually raises the presumption that he was not able to obtain them.