PEOPLE v CADLE

Docket Nos. 122755, 122757, 123273. Submitted December 14, 1993, at
Detroit. Decided April 19, 1994, at 9:35 A.M. Leave to appeal
sought.

Henry O. Cadle, Richard B. Amo, and Raymond Valin were
convicted in the Macomb Circuit Court, Michael D. Schwartz,
J., of conspiracy to possess with intent to deliver more than 650
grams of cocaine. Amo was also convicted of delivery of more
than 650 grams of cocaine. Two daughters of Amo, who had
been allowed to plead guilty of a lesser charge, testified that
their father had asked them to help transport cocaine from
Florida to Michigan in the company of their father and Valin,
which they did, and they then delivered the cocaine to Cadle
and another man. A large quantity of cocaine was found during
the search of the trunk of the automobile that Amo had been
driving, and a similar large quantity of cocaine was found
during the search of Cadle's house, although only that found in
the automobile formed the basis for these criminal charges.
The court denied the defendants' motions for separate trials. At
trial, Cadle denied knowledge of the cocaine found in the
automobile and claimed that Valin had given to him for
safekeeping a suitcase that, unbeknown to Cadle, contained
cocaine. Valin denied knowledge of the contents of the pack-
ages found in the automobile and denied giving a suitcase to
Cadle for safekeeping. Amo denied knowledge of the packages
of cocaine in the trunk of the automobile, asserting that the
packages belonged to the owner of the automobile, and denied
knowledge of any criminal activities of the other defendants or
his daughters. Each defendant appealed, and the appeals were
consolidated.

The Court of Appeals *held:*

1. Because the defendants have shown that their respective
defenses were so antagonistic to each other that the joint trial
denied each a fair trial and because the court's refusal to sever
cannot be said to be harmless error beyond a reasonable doubt,
the court's refusal to grant separate trials requires reversal of
the convictions.

2. The record clearly establishes that a police informant was

a participant in the conspiracy and, thus, was a res gestae witness that the prosecution must use due diligence to identify, locate, and produce at trial. Accordingly, the court erred in refusing to declare the informant to be a res gestae witness, in holding that his identity need not be disclosed, and in prohibiting the defendants from mentioning the informant's name at trial.

3. The fact that the court personally conducted the questioning did not deprive the defendants of meaningful voir dire.

4. The court erred in allowing the police officers to testify concerning the background information received from the informant.

5. Although admission of testimony concerning a statement allegedly made by Valin to the police was inadmissible hearsay relative to Amo and Cadle, the error was harmless.

6. The existence of the conspiracy was established sufficiently before the admission into evidence of Valin's confession, which the court properly determined to be voluntary.

7. The jury was informed adequately concerning the plea bargains that led to the trial testimony of Amo's daughters.

8. The court properly held that the cocaine found in Cadle's house had been seized pursuant to a proper search warrant and that it was admissible in this prosecution because it was relevant to establishing the existence of this conspiracy and did not create a danger of unfair prejudice that was so great as to outweigh its probative value.

9. There was sufficient evidence to convict Valin.

10. The record does not support the assertion of misconduct by the prosecutor.

11. The court properly refused to charge the jury concerning accessory after the fact.

12. Although the court should not have kept the jury in deliberations late into the evening without some explanation of the schedule it intended to follow, that action did not coerce a verdict in this case.

13. The defendants' mandatory life sentences are not constitutionally infirm.

Reversed.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Carl J. Marlinga,* Prosecuting Attorney, and *Eric J. Kaiser,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Susan J. Smith* and *Amy Neville*), for Henry O. Cadle.

*Michael J. Brady,* for Richard B. Amo.

*Martin J. Beres,* for Raymond Valin.

Before: Hood, P.J., and Murphy and Fitzgerald, JJ.

Per Curiam. Defendants were tried together below and have raised related arguments. Their appeals, therefore, have been consolidated.

Defendants were convicted by a single jury of conspiracy to possess more than 650 grams of cocaine with intent to deliver, MCL 750.157(a); MSA 28.354(1), MCL 333.7401(2)(a)(i); MSA 14.15(7401)(2)(a)(i). Defendant Amo was also convicted of delivery of more than 650 grams of cocaine, MCL 333.7401(2)(a)(i); MSA 14.15(7401)(2)(a)(i). Defendant Cadle was acquitted of this last charge. Defendant Valin was not charged with delivery. All three defendants received mandatory life sentences without possibility of parole, and they appeal as of right. We reverse and remand.

Defendants first argue that they were entitled to separate trials. We agree.

"The general rule is that a defendant does not have a right to a separate trial." *People v Hurst,* 396 Mich 1, 6; 238 NW2d 6 (1976). However, "severance should be granted when the defenses of several defendants . . . are antagonistic to each other." *Id.* Defenses are antagonistic where the defendants directly or by implication accuse each other and the trial, therefore, becomes " 'more of a contest between the defendants than between the people and the defendants' " and the defendants, thereby, are deprived of a fair trial. *Id.* at 7,

quoting *People v Braune,* 363 Ill 551, 557; 2 NE2d 839 (1936). On the other hand, we will not reverse for failure to sever where defendants fail to make an affirmative showing of prejudice and the defenses, although perhaps different, are not inconsistent and do not pit the defendants against each other. *People v Carroll,* 396 Mich 408, 414; 240 NW2d 722 (1976).

In this case, two coconspirators—the daughters of defendant Amo—testified for the prosecution in accordance with the terms of their plea bargains. They testified that their father asked them to help transport cocaine from Florida to Michigan with defendant Valin. The cocaine was to be delivered to defendant Cadle and another person, who may have been a police informant.

Large amounts of cocaine were found in the trunk of the car Amo was driving and hidden throughout Cadle's home. The charges in this case stem only from the cocaine found in the trunk of the car. The cocaine found in Cadle's home was the subject of a separate prosecution. No charges were filed regarding small amounts of cocaine found in Cadle's car and Amo's hotel room.

At trial, Cadle's strategy was to show that he knew nothing of the cocaine found in the car Amo was driving. He claimed that Valin and one of the women had given him a suitcase for safekeeping in his home and that it had turned out to be full of cocaine. He claimed that he was being used by the other defendants to hide the drugs.

Valin argued that he had been set up by the other two. He claimed he did not know the contents of the packages found in the car Amo was driving. He denied taking a suitcase to Cadle for safekeeping and noted that surveillance teams did not see him at Cadle's residence and further that,

although cocaine was found there, the alleged suitcase described by Cadle was never found.

Amo claimed that he was also unaware of the contents of the packages found in the car he was driving and that the packages belonged to the owner of the car, who was not a defendant. He disavowed any knowledge of drug activities by the others, including his daughters, and claimed no knowledge of the drugs found at Cadle's home.

As seen above, each defendant had to fend off attacks from the others in addition to those of the prosecution. As in *Hurst,* the people often sat back and let the defendants accuse and incriminate each other. Their defenses were clearly antagonistic, and the trial court abused its discretion in denying their repeated motions for severance. After carefully reviewing the record, we cannot say that this error was harmless beyond a reasonable doubt.

Next, defendants argue that the prosecutor's failure to produce the alleged informant was a violation of due process. We agree.

Generally, the people are not required to disclose the identity of confidential informants. *People v Sammons,* 191 Mich App 351, 368; 478 NW2d 901 (1991). However, " '[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.' " *Id.,* quoting *Rovario v United States,* 353 US 53, 60-61; 77 S Ct 623; 1 L Ed 2d 639 (1957). Similarly, where the informant was a participant in the underlying transaction rather than a mere supplier of information, he is a res gestae witness, and the privilege does not apply. *Simmons, supra* at 368. In such cases, the action may be dismissed for failure to produce identifying information. *Id.* The prose-

cution must use due diligence, that is, use all reasonable means, in helping defendants identify and locate res gestae witnesses. *People v DeMeyers,* 183 Mich App 286, 291-293; 454 NW2d 202 (1990).

Here, the evidence showed that the alleged informant was a part of Amo's drug conspiracy and may have participated in this crime. There was evidence that the prosecutor had met with the informant and spoken to him on the phone, but made little or no effort to produce him or serve him.

We find that the trial court clearly erred in ruling that the informant was not a res gestae witness and that his identity need not be disclosed. The trial court also clearly erred in finding that the prosecution had rendered defendants reasonable assistance in serving and locating the informant. The court further erred in forbidding defendants from mentioning the alleged informant's name at trial. In our opinion, these errors are independent grounds for reversal, because they impinged on defendants' rights of confrontation and to a fair trial. Were we not reversing on other grounds, we would remand to allow the prosecutor to rebut the presumption that these errors prejudiced defendants. See *id.* at 293-294.

We briefly address the remaining issues to provide guidance in case of a retrial.

Valin and Amo argue that they were deprived of any meaningful voir dire because the trial court conducted the questioning personally. We disagree.

A trial court may not restrict voir dire in a manner that prevents development of a factual basis for the exercise of peremptory challenges. *People v Taylor,* 195 Mich App 57, 59; 489 NW2d 99 (1992); see also *People v Tyburski,* 196 Mich App 576, 585-587; 494 NW2d 20 (1992). Thus,

[i]f a trial court is going to take the unusual procedure of conducting voir dire, as opposed to allowing the attorneys for the parties to participate, we believe that it then had the responsibility to ask probing questions and, if necessary, to consider relevant questions posed by the attorneys. [*Id.* at 589.]

The court, although it asked counsel to submit written questions, conducted voir dire en masse and did not allow counsel to ask follow-up questions. However, we find that the manner in which the questioning was conducted was not so perfunctory as to constitute independent grounds for reversal. However, we caution that the method used must be undertaken with great care and that the use of this method may lead to reversal in appropriate cases.

Amo and Cadle next argue that the trial court erred in admitting evidence concerning how the police gained knowledge of the conspiracy. We agree that, because the state of mind of the police was not a fact of consequence at trial, it was error to allow officers to testify concerning background investigations and information received from an informant that led them to monitor motel registrations for defendants' names. *People v Wilkins,* 408 Mich 69, 73; 288 NW2d 583 (1980). This is so even if the statements were not admitted for their truth and, therefore, were not hearsay. *Id.* The prejudice arising from admitting an informant's unsworn statements to the jury through the police far outweighs any conceivable probative value, especially when the informant was not produced at trial. *Id.* at 74. Were we not reversing on other grounds, we would find that, in light of the evidence on the whole record, this error would not

have provided independent grounds for reversal.[1] See MRE 103(a).

Amo and Cadle argue that the trial court committed error requiring reversal in admitting a statement allegedly made by Valin after his arrest to the effect that the other defendants would kill his children if he cooperated with the police. We disagree.

The statement was made after the end of the conspiracy and did not tend to further the conspiracy. See MRE 801(d)(2)(E). Therefore, it was inadmissible hearsay relative to Amo and Cadle. See *People v Trilck,* 374 Mich 118, 124, 128; 132 NW2d 134 (1965) (postarrest statements to the police do not further the conspiracy and are hearsay with respect to coconspirators); see also *People v Ayoub,* 150 Mich App 150, 153; 387 NW2d 848 (1985). However, in light of the evidence on this record, the error was harmless and, therefore, would not have provided independent grounds for reversal.

Valin argues that the trial court erred in allowing his confession to be introduced. We disagree. The trial court did not commit clear error in finding that Valin's confession was voluntary. *People v Delisle,* 183 Mich App 713, 719; 455 NW2d 401 (1990). We defer to the trial court's determination that Valin's story in this regard was not credible.

Valin also argues that the trial court erred in allowing his confession and statements made by coconspirators to be introduced before there was independent proof of the conspiracy. We disagree. We agree that a defendant's confession cannot

[1] We will address the question whether certain alleged errors were harmless in the context of this record, as though we were not going to reverse defendants' convictions. That is, assuming that there were no other errors requiring reversal of the convictions, would this alleged error be harmless beyond a reasonable doubt.

be used to establish the corpus delicti of a conspiracy. *People v Allen,* 390 Mich 383, 385-386; 212 NW2d 21 (1973); see also *People v Mumford,* 171 Mich App 514, 517; 430 NW2d 770 (1988). We also agree that statements of coconspirators are admissible and exempt from the definition of hearsay only where there is independent proof of the conspiracy. See MRE 801(d)(2)(E). However, we note that the corpus delicti need not be proven beyond a reasonable doubt before a defendant's confession can be introduced. *Mumford, supra* at 517; see also *People v Cotton,* 191 Mich App 377, 392-394; 478 NW2d 681 (1991). We also note that the in-court testimony of coconspirators may be used to establish the corpus deliciti. *People v Ochko,* 88 Mich App 737, 739-742; 279 NW2d 294 (1979). Circumstantial evidence of an agreement is also sufficient. *Cotton, supra* at 392-394. Here, we find that the existence of an agreement was sufficiently established before defendant's confession was introduced. Further, there was no abuse of discretion in allowing testimony concerning coconspirator Amo's incriminating out-of-court statements, subject to later independent proof of the conspiracy. *People v Hall,* 102 Mich App 483, 490; 301 NW2d 903 (1980).

Next, Amo and Valin argue that they were denied a fair trial because the jury was misled regarding the extent of the prosecutor's bargain with Amo's daughters. We agree that the prosecution had a duty to disclose the details of the plea bargains to counsel and, upon request, to the jury. *People v Woods,* 416 Mich 581, 601-602; 331 NW2d 707 (1982). Here, however, the jury was told that there was no sentencing agreement and that the women could get less than the five-year mandatory minimum if the court found substantial and com-

pelling reasons for departure. This argument therefore has no merit.

Cadle next argues that admission into evidence of the ten kilograms of cocaine found in his home should have been suppressed because the informant's affidavit upon which the search warrant was based was defective. We disagree. The affidavit was facially adequate and has not been shown to contain false information knowingly or recklessly inserted. *People v Russo,* 439 Mich 584, 603-604; 487 NW2d 698 (1992); MCL 780.653(b); MSA 28.1259(3)(b); see also *People v Stumpf,* 196 Mich App 218, 222-224; 492 NW2d 795 (1993).

Amo and Valin argue that the trial court abused its discretion in admitting that cocaine into evidence because it was irrelevant, prejudicial, and the subject of an entirely separate criminal prosecution. We disagree.

Under *People v VanderVliet,* 444 Mich 52, 74-75; 508 NW2d 114 (1993), evidence of another crime may be admitted if (1) it is relevant to an issue other than defendant's character or propensity, (2) it is relevant to an issue or fact of consequence at trial, and (3) its probative value is not substantially outweighed by the danger of unfair prejudice. *Id.* at 74-75. Here, the cocaine found in Cadle's home was packaged and marked in the same manner as the cocaine found in Amo's car. Therefore, it was relevant, not to any defendant's character or propensity, but to the existence of a conspiracy. We must still determine, however, whether its probative value was substantially outweighed by the danger of prejudice.

We note:

"[P]rejudice denotes a situation in which there exists a danger that marginally probative evidence will be given undue or pre-emptive weight by the

jury. In other words, where a probability exists that evidence which is minimally damaging in logic will be weighed by the jurors substantially out of proportion to its logically damaging effect." [*People v Harvey,* 167 Mich App 734, 746; 423 NW2d 335 (1988), quoting *Sclafani v Peter S Cusimano, Inc,* 130 Mich App 728, 735; 344 NW2d 347 (1983).]

Unfairness usually will exist where there is a "substantial danger of prejudice" but may not exist where, for example, the proponent of the evidence "has no less prejudicial means by which the substance of this evidence can be admitted." *Harvey, supra* at 746.

We find that introducing the cocaine created a danger of unfair prejudice. However, we cannot agree that this danger was so great as to substantially outweigh the probative value of the evidence. We note that the jury was not confused and, in fact, acquitted Cadle of possession even though it convicted him of conspiracy. The trial court did not abuse its discretion in admitting this evidence.[2]

Next, Cadle argues that the trial court erred in admitting evidence of a small quantity of cocaine found in his car and evidence of money transfers made to one of Amo's daughters, neither of which resulted in independent criminal charges. We disagree. We find that the evidence was relevant to Cadle's knowledge, not his character, and that its probative value was not substantially outweighed by the danger of unfair prejudice. *VanderVliet, supra* at 74-75.

Valin argues that there was insufficient evidence

---

[2] We question, without deciding, whether it was proper for the prosecutor to pursue separately charges against Cadle arising out of the cocaine found in his home when the possession of that cocaine appears to have been part of the conspiracy charged here.

to convict him. We disagree. The evidence against him, on this record, was overwhelming, especially when viewed in the light most favorable to the prosecution. *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979).

Next, Amo argues that he was deprived of a fair trial by the prosecutor's misconduct. We note that each of the instances of alleged misconduct have been addressed as errors elsewhere. We find that the prosecutor's conduct, although sometimes erroneous, did not amount to misconduct and did not deprive defendant of a fair trial. *People v Davis,* 199 Mich App 502, 517; 503 NW2d 457 (1993).

Cadle next complains of the trial court's refusal to give the instruction concerning an accessory after the fact, CJI2d 8.6. We agree that an instruction must be given where there is evidence to support it. *People v Caulley,* 197 Mich App 177, 184; 494 NW2d 853 (1992). However, we do not agree that an instruction concerning an accessory after the fact was proper in this case.

Cadle's theory was that he knew nothing of the cocaine found in his home. He claimed that he panicked and hid the cocaine throughout his home after finding it in the suitcase entrusted to him for safekeeping. On the other hand, the prosecution's evidence tended to show that Cadle had knowledge of the crime and that he knowingly helped the others to conceal the cocaine and to try to escape detection. See MCL 767.67; MSA 28.1007; CJI2d 8.6. If the cocaine found in his home had been the basis of the charges in this case, the instruction would have been proper. However, because Cadle was not charged in this case with any crime arising out of the cocaine found in his home, the instruction would only have invited the jury to convict Cadle of an uncharged crime.

Amo and Valin also argue that the jury was

coerced into reaching a verdict by being forced to deliberate late into the night. We disagree.

A jury verdict may be coerced if the jury is required to deliberate until an unreasonable hour. *People v Cook,* 130 Mich App 203, 206; 342 NW2d 628 (1983). We specifically disapprove of the court's actions here: the jury was not sent out to deliberate until 5:50 P.M., a review of the situation was to have been undertaken at 6:30 P.M., but no such review was undertaken on the record, and, further the trial court refused to disclose its schedule. The jury finally reached a verdict at 9:40 P.M.

We note that this was a complex trial that lasted six weeks. However, although in the proper case this procedure could lead to reversal, we do not find it so unreasonable as to constitute independent grounds for reversal in this particular case. This is especially true given the lack of any further objection by counsel on the record.

Amo and Valin argue that the cumulative effect of all the errors in this case denied them a fair trial. We disagree and note that, on this record, the evidence against them was overwhelming.

Defendants next challenge the constitutionality of their mandatory life sentences. The sentences are not constitutionally infirm. See *People v Fluker,* 442 Mich 891 (1993); *People v Lopez,* 442 Mich 889 (1993).

Reversed.

MURPHY, J., concurred in the result only.