# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHARLIE CROSKEY III,

        Defendant-Appellant.

UNPUBLISHED
March 19, 2015

No.  320275
Oakland Circuit Court
LC No.  2013-246512-FH

Before:  BOONSTRA, P.J., and SAWYER and O'CONNELL, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of first-degree home invasion, MCL 750.110a(2), and domestic violence, MCL 750.81(2).  The trial court sentenced defendant as a fourth habitual offender, MCL 769.12, to 57 months to 40 years in prison for the home invasion conviction and to 90 days (time served) for the domestic violence conviction.  We affirm.

## I.  PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant's convictions arise from an incident that occurred on June 11, 2013, when he broke into a home occupied by his girlfriend, Monica Colon-Holloway, and assaulted her.

Before trial, the prosecution filed a notice of intent to introduce other-acts evidence under MCL 768.27b, asserting that the evidence was relevant to prove both defendant's character and his intent to commit the charged offenses, and "to rebut a claim that the incident was fabricated." The other-acts evidence related to prior incidents of physical violence between defendant and Colon-Holloway and threatening phone calls made by defendant to Colon-Holloway and her mother.  Defendant did not file a response to the notice, and the court did not address the matter until trial.

Before jury selection, the prosecution moved for the admission of the evidence listed in its notice of intent.  Defendant announced an intent to object to the evidence when it was offered at trial, contending that it was not relevant to the charged incident that occurred on June 1, 2013[1].  The trial court ruled as follows:

> Notice was appropriately and properly given to the Defendant that the
> People intended to use these two other circumstances or incidents as other acts

-1-

evidence in this case. The statute is clear that once the Notice is given and it's not for purpose to prove character, but some other allowable purpose the Court does the balancing test and in this case I find that it would be relevant to show state of mind of the victim.

Also, any lack of mistake also can lead to show scheme, plan of the Defendant and that's very relevant in this case. So People's motion and request is granted. Objection is overruled.

Colon-Holloway testified that she began a dating relationship with defendant in 2012 and had moved in with him and his daughter by the end of that year. She testified that defendant was controlling and was physically abusive when drinking. She testified that in January 2013, she and defendant argued. She was uncertain whether defendant hit her during that argument. Later, while defendant and his daughter were absent from the home, Colon-Holloway packed up her things and went to stay with her mother.

Colon-Holloway testified that, after she moved from defendant's home, she and defendant "quit talking for a minute." She further testified that in February 2013, "we got the stalking and the harassing calls." Colon-Holloway explained that defendant started calling her and asking why she had left him. Sometimes he called her several times a day. On February 22, 2013, defendant called Colon-Holloway 20 or 30 times. He told her that he was going to come to her mother's house. Colon-Holloway believed that defendant was drunk when he called. Colon-Holloway, who was not home at the time, called her mother to warn her. This incident led to police involvement. Defendant was issued a citation and the court imposed a no-contact order.

Despite the no-contact order, Colon-Holloway and defendant continued to speak. Defendant promised not to drink anymore and said he was going to change. They agreed to "try to make it work" and began seeing each another again in March 2013.[1] Colon-Holloway and defendant became engaged on or about May 3, 2013.

Colon-Holloway testified that on the evening of June 11, 2013, she went out with defendant. Because her aunt, among others, did not approve of the relationship, Colon-Holloway did not want anyone to know that she was going out with defendant, so she met him at a local party store between 5:00 and 6:00 p.m. Defendant picked her up at that location and they drove around for awhile and talked. Defendant asked Colon-Holloway about her relationship with a man named Paul. When Colon-Holloway confirmed that Paul was a friend of hers, defendant became angry and said, "I might as well just take you back to your aunt's house." Defendant dropped Colon-Holloway off at Holloway's house; Colon-Holloway went inside the house and assumed that defendant had left.

---

[1] By that time, Colon-Holloway was living with her aunt, Cheryl Holloway. Also living in the home were Holloway's boyfriend, Terrence Stroman, and their three teenaged children.

Colon-Holloway testified that she and her cousin were in the living room "when the front door flew open" and defendant came in and attacked her. Specifically, defendant rushed at her and hit or pushed her in the back, knocking her to the floor. Her cousin intervened and pushed defendant away. Colon-Holloway got up and defendant started calling her names and hit her once in the mouth. The cousin and defendant "exchanged words." Colon-Holloway and her cousin told defendant to leave. Colon-Holloway said that she was going to call the police, and defendant ran out the door saying, "I'm coming back to kill you guys." One of Colon-Holloway's cousins called Holloway, who was not in the house, and Holloway called the police. Holloway came home and the police arrived shortly thereafter. Colon-Holloway spoke to the police, but originally denied having any current relationship with defendant and claimed (in an effort to prevent him from going to jail) that he had just shown up unexpectedly.

Colon-Holloway's cousin and Holloway confirmed Colon-Holloway's version of events. Holloway testified that although defendant had been to her house on numerous occasions, was allowed to come over to see Colon-Holloway, and had even spent the night on occasion, he was not allowed to come into the house without permission.

Christopher Miracle, an Oakland County deputy sheriff, testified that he was dispatched to Holloway's house at 10:20 p.m. on June 11, 2013 to investigate a call of "a domestic nature." Miracle spoke to Colon-Holloway outside. She was upset and showed him a cut on the inside of her lip. Colon-Holloway told Miracle that defendant was her ex-boyfriend and that they had a no-contact order. While speaking to Miracle, Colon-Holloway saw defendant driving up to the house and pointed him out to Miracle. Another deputy initiated a traffic stop. Defendant was reluctant to stop and resisted the officers when they tried to handcuff him.

Defendant admitted to having a dating relationship with Colon-Holloway but denied ever striking her. He admitted to having "[a]n argument on the phone" with Colon-Holloway, which led to a citation "for harassing phone calls" and the no-contact order, but said that Colon-Holloway's mother was to blame. He claimed that he went to Colon-Holloway's aunt's house on the night in question to return a yard tool and that he and Colon-Holloway had argued; he denied striking her and testified that he left because he was too tired to argue anymore. He stated that he was returning to the house to apologize when he was arrested.

The jury convicted defendant as described above. This appeal followed. Defendant's sole issue on appeal is that the trial court erred in admitting under MCL 768.27b evidence of prior acts of abuse and harassment by defendant against Colon-Holloway.

## II. STANDARD OF REVIEW

Defendant objected to the admission of the challenged evidence on the ground that it was not relevant; however, he did not object on the ground that, even if relevant, the evidence was more prejudicial than probative. "An objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground." *People v Acevedo*, 217 Mich App 393, 398; 551 NW2d 478 (1996). Thus, only the relevancy issue is preserved. A preserved issue regarding the admission of evidence is reviewed for an abuse of discretion. *People v Hine*, 467 Mich 242, 250; 650 NW2d 659 (2002). An unpreserved evidentiary issue is reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130

(1999); *People v Houston*, 261 Mich App 463, 466; 683 NW2d 192 (2004), aff'd 473 Mich 399 (2005).

## III. ANALYSIS

We find no error requiring reversal in the admission of the challenged evidence. Where, as here, a defendant is charged with an offense involving domestic violence, evidence of other acts of domestic violence that occurred less than 10 years before the charged offense "is admissible for any purpose for which it is relevant, if it is not otherwise excluded under [MRE] 403." MCL 768.27b(1) and (4). Unlike MRE 404(b), the MCL 768.27b permits the evidence to be used "to show a defendant's character or propensity to commit the same act." *People v Railer*, 288 Mich App 213, 219-220; 792 NW2d 776 (2010). The other acts consisted of harassing telephone calls and actual physical violence. Both types of conduct qualify as "domestic violence" as defined by MCL 768.27b(5)(a). Although defendant asserts that the evidence was not relevant, he does not otherwise address the question of relevancy, or argue a basis for its alleged irrelevancy. Therefore, we could deem that aspect of defendant's argument abandoned. *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004) ("[a]n appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue"). Nonetheless, we note that the evidence of the phone calls was at least minimally relevant in shedding light on a material point, i.e. the nature of defendant and Colon-Holloway's relationship. The evidence of other acts of physical violence towards Colon-Holloway was highly relevant to show defendant's propensity to commit the act for which he was charged. See MRE 401, 402, *People v Murphy* (*On Remand*), 282 Mich App 571, 580; 766 NW2d 303 (2009); see also *Railer*, 288 Mich App at 219-220. Thus, we conclude that the trial court did not abuse its discretion in determining that the challenged evidence was relevant. See *People v Blackston*, 481 Mich 451, 467; 751 NW2d 408 (2008).

The primary focus of defendant's argument is that the evidence should have been excluded under MRE 403. We disagree.

"Although relevant, evidence may be excluded if the probative value is substantially outweighed by the danger of unfair prejudice[.]" MRE 403. In *People v Cameron*, 291 Mich App 599, 611; 806 NW2d 371 (2011), this Court stated:

> [T]his Court must make two distinct inquiries under the balancing test of MRE 403. First, this Court must decide whether the introduction of [the defendant's] prior-bad-acts evidence at trial was unfairly prejudicial. Then, this Court must apply the balancing test and "weigh the probativeness or relevance of the evidence" against the unfair prejudice. Upon completion of this second inquiry, this Court can determine whether the trial court abused its discretion in allowing [the defendant's] prior bad acts into evidence. [Footnote omitted.]

The fact that evidence is damaging does not mean that it is unfairly prejudicial because "'[a]ny relevant testimony will be damaging to some extent." *Sclafani v Peter S Cusimano, Inc*, 130 Mich App 728, 735-736; 344 NW2d 347 (1983). Evidence offered against a party is "by its very nature . . . prejudicial, otherwise there would be no point in presenting it." *People v Fisher*, 449 Mich 441, 451; 537 NW2d 577 (1995). Instead, "unfair prejudice refers to the tendency of

the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v Goree*, 132 Mich App 693, 702-703; 349 NW2d 220 (1984). Generally, evidence is unfairly prejudicial if there is "a danger that marginally probative evidence will be given undue or preemptive weight by the jury," *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998), if it would lead the jury to decide the case on an improper basis such as emotion, *People v Meadows*, 175 Mich App 355, 361; 437 NW2d 405 (1989), or if "it would be inequitable to allow the use of the evidence," *Blackston*, 481 Mich at 462.

In a related context, our Supreme Court has identified a list of factors "that may lead a court to exclude" evidence "under MRE 403 as overly prejudicial," including "(1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony." *People v Watkins*, 491 Mich 450, 487-488; 818 NW2d 296 (2012) (footnote omitted). While the trial court should apply the balancing test "to each separate piece of evidence offered," *id*. at 489, it need not conduct the balancing test on the record. *People v Gaines*, 306 Mich App 289, 302 n 8; 856 NW2d 222 (2014).

The harassing telephone calls were not particularly similar to the charged offense, which involved a physical assault. But they occurred close in time to the charged offense, only four months earlier. The frequency of the harassing telephone calls is unclear; the evidence showed that on one occasion, defendant made 20 to 30 calls in one day, but it did not indicate how seldom or often defendant made other harassing calls to Colon-Holloway. As stated earlier, the harassing phone calls were, like the physical abuse, indicative of the dysfunctional nature of the couple's relationship. The February incident of harassing phone calls was well-documented; in addition to both the Colon-Holloway's and defendant's testimony, it was supported by a register of actions from the 50th District Court that was admitted into evidence. Balancing these factors, it cannot be said that the trial court's admission of the evidence constituted plain error. See *Carines*, 460 Mich at 763-764. Further, although the evidence of the phone calls may have been only minimally probative, there was little risk that the brief testimony regarding the phone calls would lead the jury to convict defendant on an improper basis. See *Meadows*, 175 Mich App at 361.

The evidence of other incidents of physical violence against Colon-Holloway was highly similar to the charged offense of domestic violence. The temporal proximity and frequency of the other acts in relation to the charged offense is unclear, but it appears that it was a recurrent feature of the relationship; the couple argued frequently, and when they argued defendant was apt to become physically abusive, especially if he had been drinking. These other incidents were similar to the charged offense, which took place during or shortly after an argument. Defendant denied any acts of physical violence. The evidence was necessary to help the jury determine which of the victim's or defendant's versions of the events was more likely accurate and credible. Finally, although evidence that defendant had previously struck Colon-Holloway was undoubtedly prejudicial, it was not the sort of evidence that would lead the jury to decide the case on an improper basis; indeed the jury was properly allowed to consider such highly probative evidence in determining whether defendant had committed the charged offense of

domestic violence.  See MCL 768.27b; see also *Meadows*, 175 Mich App at 361.  We find that the admission of such evidence was not plain error.  See *Carines*, 460 Mich at 763-764.

Affirmed.

/s/ Mark T. Boonstra
/s/ David H. Sawyer
/s/ Peter D. O'Connell