*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 27, 2020

Plaintiff-Appellee,

v

No. 347333
Kent Circuit Court

MARQUES SCOTT MONDY,

LC No. 18-004280-FH

Defendant-Appellant.

Before: BORRELLO, P.J., and SAWYER and SERVITTO, JJ.

PER CURIAM.

Defendant, Marques Scott Mondy, appeals as of right his jury trial convictions of two counts of third-degree criminal sexual conduct, MCL 750.520d(1)(b). The trial court sentenced defendant to concurrent terms of 10 to 15 years in prison. We affirm.

In December of 2015, while 19-year-old CD was home from college on vacation, she and a friend went to another friend's house where defendant was also present. Defendant and CD eventually went upstairs and into a bedroom to give the other two individuals, who had a prior dating relationship, some privacy. CD sat on the bed and defendant left to go to the bathroom. When he returned, he closed and locked the bedroom door behind him. CD told defendant that she was not going to have sex with him. Defendant kissed her, and she pulled away and told defendant again that they were not going to have sex. Defendant then got angry and pulled down his pants, revealing that he was wearing a condom. He pushed CD back onto the bed, climbed on top of her, and orally penetrated her. CD began crying and defendant stopped. According to CD, it initially appeared as though he was going to unlock the door. However, he returned and pulled CD's pants and underwear down around her knees, pushed her legs open, and penetrated her. He eventually stopped and opened the bedroom door. CD then fled downstairs, got her friend, and left. She drove to a friend's house and told him. She then drove home and told her sister and parents. She did not immediately report the incident to the police. CD did, eventually, inform he police of what happened and defendant was arrested and charged with the instant offenses. A jury convicted him, as indicated above.

On appeal, defendant first argues that when the prosecution exercised peremptory challenges to excuse two jurors who were African-American, it failed to provide valid reasons as required by *Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986). We disagree.

There is a three-step process to analyze the constitutional propriety of a peremptory challenge under *Batson*. *People v Knight*, 473 Mich 324, 336; 701 NW2d 715 (2005). The opponent of the peremptory challenge must first make a prima facie showing of racial discrimination. *Id*. Next, if a prima facie showing has been made, the proponent of the peremptory challenge has the burden of articulating a race-neutral explanation for the challenge. *Id*. at 337. The third step requires the trial court to determine whether the race-neutral explanation is a pretext and whether the opponent of the challenge has proved purposeful discrimination. See *id*. at 337-338. When, as here, the third step is at issue, we review the trial court's ruling for clear error. *Id*. at 344-345. A trial court's ruling is "clearly erroneous if it leaves this Court with a definite and firm conviction that a mistake has been made." *People v Williams*, 244 Mich App 533, 537; 624 NW2d 575 (2001).

During jury selection the trial court randomly called two jurors, AH and KH, to the jury box. The trial court asked each juror general questions about marital status, children, education, and employment. AH and KH both responded that they were married with two children. AH also revealed that he had a criminal record and previous experience in counseling working with "at-risk students." The prosecution then asked if any of the jurors knew each other. AH and KH then revealed that they were married to each other and shared the two children. KH confirmed that they were still married. The prosecution also inquired whether KH shared the "same views on issues and things in life" with AH. The prosecution ultimately used peremptory challenges to dismiss AH and KH. Defendant objected, claiming that it deprived him of having minorities present on the jury.

As previously indicated, the third *Baston* step requires, when a court finds that a prosecutor has articulated a race-neutral ground for a peremptory challenge, to then determine whether the strike is nonetheless discriminatory. *People v Tennille*, 315 Mich App 51, 65; 888 NW2d 278 (2016). "[T]he critical question in determining whether a [defendant] has proved purposeful discrimination at step three is the persuasiveness of the prosecutor's justification for his peremptory strike. The issue comes down to whether the trial court finds the prosecutor's race-neutral explanations to be credible." *Id*. at 64 (brackets, ellipses, and quotation marks omitted). Credibility can be determined by examining the prosecutor's demeanor, how reasonable or how improbable the explanations were, and whether the proffered rationale had some basis in accepted trial strategy. *Id*. Here, defendant did not prove purposeful discrimination.

First, when asked for its reason for exercising the challenge against AH and KH, the prosecution provided multiple reasons. It first cited AH's previous counseling experience and criminal record as reasons. However, the prosecution went on to discuss multiple times, and much more thoroughly, its belief that the marriage might cause bias as AH and KH might influence each other and might create a situation where the trial court's instructions would not be followed given the opportunity and inclination of a married couple to discuss the case outside of deliberations. Notably, the prosecution first attempted to challenge the jurors for cause citing marriage as the reason. It reiterated that reason in making its peremptory challenges and additionally pointed out that neither potential juror volunteered the fact that they were married during voir dire and that

their body language when questioned whether they knew each other suggested that they did not want to provide the information. The prosecutor also noted the following during argument on the *Batson* issue:

> And it is not simply based on race, because I would have done that for any race. When you have a married couple on the jury panel, that caused me a lot of concern, and a big one, as I indicated, is that are they going to discuss this matter outside of the court, outside of the jury room, outside of Your Honor's instructions.

The trial court's finding the prosecutor's race-neutral explanations to be credible was not clearly erroneous.

Second, "[p]rotecting a defendant's right to a fair and impartial jury does not entail ensuring any particular racial composition of the jury." *Knight*, 473 Mich at 349. Thus, the ultimate makeup of the jury panel alone does not demonstrate discriminatory intent. Moreover, in making its ultimate determination regarding discriminatory intent, a trial court may properly consider the number of minority jurors in the jury box at the time of the challenges as well as the number of minority jurors on the final jury. *Tennille*, 315 Mich App at 74. In this case, when the prosecution exercised the challenges to AH and KH, two seats were left open that potentially could have been filled by African-Americans who remained in the venire. Additionally, the trial court indicated that it appeared that more than one race made up the jury panel. Ultimately, the trial court stated, "I don't think we've wiped the jury, nor the panel, clean of minorities." The trial court properly considered the number of minorities remaining in the venire and the number of minorities on the final jury panel in making its decision.

Finally, defendant's framing of the trial court's statements to suggest that the trial court questioned its own decision is not fully accurate. The trial court did say that it was "reluctant," and that the prosecutor's explanation "barely survives a *Batson* challenge." However, the trial court did ultimately conclude that the prosecution's reasoning was "rational" and "logical." We conclude that defendant has not demonstrated that the peremptory challenges were the result of racial discrimination. Accordingly, we are not left with a "definite and firm conviction that a mistake has been made," *Williams*, 244 Mich App at 537, in the trial court's granting of the prosecution's peremptory challenges to AH and KH as jurors.

Defendant next argues that he is entitled to a new trial because the trial court erroneously admitted other-acts evidence. We disagree.

A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *People v Unger*, 278 Mich App 210, 247; 749 NW2d 272 (2008). A trial court abuses its discretion when it chooses an outcome that is outside of the range of reasonable and principled outcomes. *People v Yost*, 278 Mich App 341, 353; 749 NW2d 753 (2008).

MRE 404(b) governs the admissibility of other-acts evidence, and it states in relevant part:

> (b) Other crimes, wrongs, or acts.

(1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Other-acts evidence under MRE 404(b) may be admitted if it meets the following three-part test:

First, the prosecutor must offer the other acts evidence under something other than a character to conduct or propensity theory. Second, the evidence must be relevant under MRE 402, as enforced through MRE 104(b), to an issue of fact of consequence at trial. Third, under MRE 403, a determination must be made whether the danger of undue prejudice substantially outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making [a] decision of this kind under Rule 403. Finally, the trial court, upon request, may provide a limiting instruction under MRE 105. [*People v Sabin*, 463 Mich 43, 55-56; 614 NW2d 888 (2000), citing *People v VanderVliet*, 444 Mich 52; 508 NW2d 114 (1993) (quotation marks and citations omitted).]

At trial, the prosecution presented witnesses who testified about two previous sexual assaults that defendant had committed. We conclude that the evidence was offered for the proper, nonpropensity purpose of proving a scheme, plan, or system in doing an act. "[D]istinctive and unusual features are not required to establish the existence of a common design or plan. The evidence of uncharged acts needs only to support the inference that the defendant employed the common plan in committing the charged offense." *People v Hine*, 467 Mich 242, 252-253; 650 NW2d 659 (2002). The prosecutor sought to establish a common scheme, plan, or system in defendant isolating the victims in a room and closing the door behind them when others were in the same home or building and then using force or coercion to make the victim submit to his assaults. In both prior assaults, defendant isolated his victims and then started to kiss them. When the victims rejected his advances, he became more aggressive, to the point that he pulled off their clothing and forced himself on them. Those occurrences were nearly identical to what happened in this case. The other-acts evidence supported the inference that defendant employed the common plan of isolating the victims, closing them behind doors, trying to kiss them, and then using force and aggression to assault them if he was rebuffed. *Id*. at 252-253.

This evidence was relevant under MRE 402. MRE 402 states, "All relevant evidence is admissible . . . . Evidence which is not relevant is not admissible." MRE 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." A fact that was of consequence to the determination of this case was whether defendant used force or coercion to sexually assault the victim. See MCL 750.520d(1)(b). "[E]vidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *Sabin*, 463 Mich at 63. Stated differently,

-4-

"evidence that the defendant has committed uncharged criminal acts that are similar to the charged offense may be relevant if these acts demonstrate circumstantially that the defendant committed the charged offense pursuant to the same design or plan he or she used in committing the uncharged acts." *Id*. at 66.

As stated, the facts of the previous assaults were nearly identical to the facts of the assault against the victim in this case. Thus, the facts of the assaults were "sufficiently similar to support an inference" that defendant "committed the charged offense pursuant to the same design or plan he . . . used in committing the uncharged acts." *Id*. The evidence of defendant's use of a common plan, scheme, or system in committing the prior assaults tended make the fact that he used the same common plan, scheme, or system in committing the assault in this case more probable than it would be without the evidence.

Lastly, the evidence was more probative than prejudicial under MRE 403, which states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

With respect to MRE 403, our Supreme Court has stated:

We believe that the notion of "unfair prejudice" encompasses two concepts. First, the idea of prejudice denotes a situation in which there exists a danger that marginally probative evidence will be given undue or pre-emptive weight by the jury. In other words, where a probability exists that evidence which is minimally damaging in logic will be weighed by the jurors substantially out of proportion to its logically damaging effect, a situation arises in which the danger of "prejudice" exists. Second, the idea of unfairness embodies the further proposition that it would be inequitable to allow the proponent of the evidence to use it. Where a substantial danger of prejudice exists from the admission of particular evidence, unfairness will usually, but not invariably, exist. [*People v Mills*, 450 Mich 61, 75-76; 537 NW2d 909 (1995), quoting *Sclafani v Peter S. Cusimano, Inc*, 130 Mich App 728, 735-736; 344 NW2 347 (1983)]

The other-acts evidence in this case was highly probative of defendant's method in accomplishing the sexual assault of CD. And, there was no indication that the jury gave the evidence "undue or pre-emptive weight." *Id*. To the extent that introduction of the evidence was improper, the trial court instructed the jury as follows:

You have heard evidence that was introduced to show that the defendant had committed other crimes or improper acts for which he is not on trial. If you believe this evidence you must be very careful only to consider it for certain purposes. You may only think about whether the evidence tends to show proof of motive opportunity, intent, preparation, scheme, plan, system of doing an act,

knowledge, identity, absence of mistake or accident. You must not consider this evidence for any other purpose. For example, you must not decide that it shows the defendant is a bad person or that he is likely to commit crimes. You must not convict the defendant here because you think he is guilty of other bad conduct. All the evidence must convince you beyond a reasonable doubt that the defendant committed these alleged crimes or you must find him not guilty.

The trial court's instruction cured any prejudicial effect that may have existed. *People v Ackerman*, 257 Mich App 434, 449; 669 NW2d 818 (2003). Accordingly, we conclude that the trial court did not abuse its discretion in admitting the other acts evidence.

Defendant next argues that he is entitled to resentencing because the trial court allegedly relied on an incorrect guidelines range in crafting his sentence. Defendant also argues that his trial counsel's failure to object to the guidelines deprived him of the effective assistance of counsel. We disagree with both assertions.

"A defendant is entitled to be sentenced according to accurately scored guidelines and on the basis of accurate information. A sentence is invalid when a sentencing court relies on an inappropriate guidelines range." *People v McGraw*, 484 Mich 120, 131; 771 NW2d 655 (2009), citing *People v Francisco*, 474 Mich 82, 88-89; 711 NW2d 44 (2006). However, remand for resentencing because of a *Francisco* error is not required if we determine that an upward departure sentence is reasonable and that the sentence "did not rely on the minimum sentence range from improperly scored guidelines." *People v Ambrose*, 317 Mich App 556, 565; 895 NW2d 198 (2016) (ellipses omitted).

In this case, at sentencing both the prosecution and defense agreed that defendant's total Offense Variable (OV) score should be reduced from 85 to 60, which brought his OV level to Level V. His Prior Record Variable (PRV) score was 22, which was Level C. OV V and PRV C intersect at 51 to 85 months. MCL 777.63. This is different than the range recited by the trial court, 57 to 95 months. Thus, the trial court sentenced defendant based on an inaccurate guidelines range. Ordinarily, this would entitle defendant to resentencing. *McGraw*, 484 Mich at 131. However, the trial court departed upward from the sentencing guidelines and sentenced defendant to imprisonment for 10 to 15 years. This upward departure was higher than both the accurately and inaccurately scored guidelines. In crafting its sentence, the trial court stated that it was aware of the controlling caselaw indicating that the guidelines were advisory only and that it must craft a proportionate sentence. It also provided its reasons for departing upward and why it believed the sentence was proportionate. The trial court ultimately sentenced defendant to the maximum sentence possible. The trial court did not rely on the minimum sentence range from the improperly scored guidelines when sentencing defendant. And as discussed below, the sentence was reasonable and proportionate. Thus, we conclude that resentencing is not required because of the *Francisco* error because the trial court departed upward and imposed a reasonable sentence, and it did not rely on the minimum sentence range from the improperly scored guidelines. *Ambrose*, 317 Mich App at 565.

As to defendant's assertion of ineffective assistance of counsel, even if counsel had objected to the inaccurately scored guidelines, the indication is that the trial court still would have

imposed the same sentence. Accordingly, counsel's objection essentially would have been futile. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel."). Defendant has not demonstrated that, had counsel objected, a different result was reasonably probable. *People v Russell*, 297 Mich App 707, 715-716; 825 NW2d 623 (2012). Thus, defendant had failed to establish the effective assistance of counsel.

Defendant lastly argues that he is entitled to resentencing because his sentence was not reasonable and proportionate. We disagree.

"To preserve a sentencing issue for appeal, a defendant must raise the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals." *People v Anderson*, 322 Mich App 622, 634; 912 NW2d 607 (2018) (quotation marks and citation omitted). This includes an issue regarding the reasonableness of a sentence. *Id*. In this case, defendant did not raise this issue below or in his motion to remand filed with this Court. Thus, the issue is not preserved for appeal.

Generally, we review a departure sentence for reasonableness. *Id* at 636. A sentence is reasonable "if it adheres to the principle of proportionality set forth in [*People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990)]." *People v Lampe*, 327 Mich App 104, 126; 933 NW2d 314 (2019) (quotation marks and citation omitted). "That is, sentences imposed by a trial court must be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*. at 125 (quotation marks and citation omitted). A sentence outside of the guidelines range "may be imposed when the trial court determines that the recommended range under the guidelines is disproportionate, in either direction, to the seriousness of the crime." *Id*. at 126 (quotation marks and citation omitted). The trial court may consider the following factors in crafting a proportionate sentence:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*Id*. (citation omitted).]

A trial court must explain why a sentence departure "is more proportionate to the offense and the offender than a different sentence would have been" in order to facilitate appellate review. *Id*. at 126-127 (quotation marks and citation omitted).

In imposing an out-of-guidelines sentence of 10 to 15 years' imprisonment, the trial court considered the seriousness of the offense. It stated that it was "very familiar with the facts and circumstances of this case." It then recounted that the case was one in which the victim was home from college and visiting with friends when defendant locked her in a room with him, disregarded her intentions, and forcibly raped her. The trial court also considered factors not considered by the guidelines, such as the evidence of defendant's other sexual assaults that did not result in criminal charges. The trial court stated: "I sat at pretrial motions and allowed in several other incidences where you had raped young women. They testified at [sic] the course of this trial."

The trial court continued: "You have, quite frankly, refused to accept any responsibility for this matter. You are without question a serial rapist. You are a danger to this community, sir." The trial court also considered defendant's criminal history, including that he had two misdemeanors and a juvenile record. It stated that defendant had been in jail before and was also previously on probation. After referencing the relevant caselaw, the trial court stated: "I believe the sentence I'm going to impose is reasonable and proportionate."

The trial court did not inappropriately consider defendant's refusal to accept responsibility for his actions in this case. It is true that "[a] court cannot base its sentence even in part on a defendant's refusal to admit guilt," and resentencing is required if "it is apparent that the court erroneously considered the defendant's failure to admit guilt, as indicated by action such as asking the defendant to admit his guilt or offering him a lesser sentence if he did." *People v Conley*, 270 Mich App 301, 314; 715 NW2d 377 (2006) (quotation marks and citations omitted). However, in this case, the trial court made an isolated statement, "You have, quite frankly, refused to accept any responsibility for this matter." This statement did not indicate that the trial court based its sentence in part on defendant's refusal to admit guilt or that he would have received a different sentence if he had done so.

The trial court considered the appropriate factors in crafting a sentence that was outside of the guidelines range, including the seriousness of the offense and factors not considered by the guidelines. It justified the departure by reciting valid reasons, including the desire to protect society from defendant because he was a "serial rapist." Thus, we conclude that the departure sentence was reasonable and proportionate. Accordingly, defendant is not entitled to resentencing, or resentencing before a different judge.

Affirmed.

/s/ Stephen L. Borrello
/s/ David H. Sawyer
/s/ Deborah A. Servitto