*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
May 13, 2021

v

PHIL RAY PARKE,

        Defendant-Appellant.

No. 352580
Monroe Circuit Court
LC No. 19-245059-FH

Before: BOONSTRA, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury conviction of breaking and entering a building with intent to commit a felony, MCL 750.110, for which he was sentenced, as a fourth-offense habitual offender, to 4 to 20 years in prison. Defendant was also ordered to pay $5,393.21 in restitution, which included reimbursement for 400 packs of cigarettes. We affirm defendant's conviction, but remand for further proceedings on the issue of restitution only.

In the early morning hours of July 5, 2018, someone driving a blue Ford pickup truck broke into a Sunoco gas station, filled a blue garbage bag with cartons of cigarettes, left the store, and fled in the pickup truck with a companion. Surveillance video clearly shows the entire break-in, but captured only partial images of the face of the person who committed it. The surveillance footage was posted on Facebook through Crime Stoppers, and an unidentified person came forward with defendant's name. Defendant was subsequently found to own a 1988 Ford Ranger consistent with the apparent make and model of the truck in the video. Defendant's prints were found on pieces of a blue garbage bag used during the break-in and left behind by the perpetrator. The only issue at trial was identity—whether defendant was the person shown in the surveillance video breaking in to the store.

At trial, a store employee testified that the surveillance video was shared "on Crime Stoppers through Facebook." The prosecutor then asked:

> *Q.* And based on responses from that, were you able to make a determination as to who you believed was responsible for this break-in?

-1-

*A.* Yes. Somebody gave us a name.

Defense counsel objected to this response as hearsay. The prosecutor responded, "it's really only offered to show how—it's not offered to show the truth of the matter asserted." The court overruled the objection, but cautioned the prosecutor not to go any further because an objection at "the next step" would be sustained. The next witness to testify, a police officer, then explained that he had been contacted by the store employee "regarding possible leads in the case because of social media." Specifically, he was given a name that he ran through a law enforcement database. When asked about the results of the search, the officer testified that "the subject that [he] ran" through the database was defendant and the officer went on to describe the search results.

## I. THE OUT-OF-COURT IDENTIFICATION

Defendant argues that the trial court abused its discretion by overruling his hearsay objection, under MRE 802, with regard to the testimony about the Crime Stoppers identification. Defendant further argues that admitting the identification was plain error in violation of MRE 403 and the Confrontation Clause, US Const, Am VI; Const 1963, art 1, § 20. Finally, in the alternative, defendant argues that trial counsel was ineffective for failing to object on MRE 403 and Confrontation Clause grounds. We conclude that none of these claims warrant appellate relief.

## A. HEARSAY ANALYSIS

The trial court's decision to admit evidence is generally reviewed for an abuse of discretion. *People v Ullah*, 216 Mich App 669, 673; 550 NW2d 568 (1996). "An abuse of discretion occurs when a trial court's decision falls outside the range of reasonable and principled outcomes." *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017) (quotation marks and citation omitted). To merit reversal, nonconstitutional error must be outcome-determinative. *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999).

Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801. As such, if "the proponent of the evidence offers the statement for a purpose other than to prove the truth of the matter asserted, then the statement, by definition, is not hearsay." *People v Musser*, 494 Mich 337, 350; 835 NW2d 319 (2013). This Court has also held that when "a witness testifies that a statement was made, rather than about the truth of the statement itself, the testimony is not hearsay." *People v Harris*, 201 Mich App 147, 151; 505 NW2d 889 (1993). Additionally, "[a]n out-of-court statement introduced to show its effect on a listener, as opposed to proving the truth of the matter asserted, does not constitute hearsay under MRE 801(c)." *People v Gaines*, 306 Mich App 289, 306-307; 856 NW2d 222 (2014).

The question, then, is whether the Crime Stoppers identification was properly admitted for a nonhearsay purpose. While no specific purpose was offered at trial, it is reasonable to infer from the context of the statement that the information was admitted to explain the course of the police investigation. This Court has discussed similar situations in the Confrontation Clause context. The Confrontation Clause cases are instructive because they analyze the out-of-court identifications in question to determine whether they were offered for the "truth of the matter asserted" or for a nonhearsay purpose—the same issue relevant here.

This Court has stated in the Confrontation Clause context that "a statement offered to show why police officers acted as they did is not hearsay." *People v Chambers*, 277 Mich App 1, 11; 742 NW2d 610 (2007). In *Chambers*, testimony about a tip that someone had recognized the defendant in a photograph was held to have been "offered to establish and explain why the detective organized a surveillance of defendant's home and how defendant came to be arrested," rather than for the truth of the identification. *Id*. at 11. This Court has also held that "a tip through Crime Stoppers that the individual" who committed a crime "was named 'Mike' and that he 'lived on Central,' " was clearly not offered for the truth of the matter asserted when it was offered to explain why police included the defendant's picture in a photo identification array. *People v Putman*, 309 Mich App 240, 246; 870 NW2d 593 (2015).

On the other hand, once again in the Confrontation Clause context, this Court ruled that testimony regarding an informant's out-of-court statement was improper in *People v Henry (After Remand)*, 305 Mich App 127, 154; 854 NW2d 114 (2014) (but holding that admission of the testimony did not affect defendant's substantial rights). In *Henry*, an officer testified that an informant "came forward with the defendant's name" and that, on the basis of the informant's information, the officer believed the defendant was responsible for several robberies. *Id*. This Court held that this "testimony necessarily implied that the informant accused defendant" of the crimes in question, and that *the officer found the informant to be credible*. *Id*. The Court noted that, had the officer "limited his testimony to an explanation that, on the basis of the information he received from the informant he proceeded in a certain direction with his investigation, it may have been admissible." *Id*.

These cases suggest that the key question is whether testimony was primarily offered to explain the course of an investigation, or primarily to show that a defendant committed the crime in question. On one hand, the testimony in this case clearly implied that someone identified defendant as the perpetrator, and the jury was allowed to use that information for its truth because no limiting instruction was given. On the other hand, the statement in question gave few details about the identification, and there was no implication that the Crime Stoppers tip was considered trustworthy by law enforcement. *Cf. Henry*, 305 Mich App at 154 (noting the importance of the fact that the officer in that case testified that he trusted the informant's identification). From the trial testimony, the jury could infer that someone saw the Crime Stoppers pictures and thought that the person pictured was defendant or that the vehicle was defendant's. The police then proceeded to investigate defendant because of that tip. Arguably, the discussion of the tip in this case is very similar to what this Court said should have been done in *Henry*. The discussion was limited essentially to a statement that, "on the basis of the information" from the Crime Stoppers tip, the police "proceeded in a certain direction with [the] investigation." See *id*.

Given our caselaw, it was not outside the range of principled outcomes for the trial court to admit the testimony in this case, and therefore, the trial court did not abuse its discretion. See also *People v Nimeth*, 236 Mich App 616, 626 n 5; 601 NW2d 393 (1999) (holding that testimony about a prior bad act was not hearsay because "it was admitted for the purpose of establishing why defendant was stopped, detained, and searched, and not for the truth of the matter asserted").

## B. UNPRESERVED CHALLENGES TO THE OUT-OF-COURT IDENTIFICATION

Defendant's unpreserved challenges to the out-of-court identification testimony are reviewed for plain error. See *People v Hawkins*, 245 Mich App 439, 447; 628 NW2d 105 (2001). To show plain error, a party must show that there was error, that it was clear or obvious, and that it affected substantial rights. Generally, an error affects substantial rights when it affects "the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). If those requirements are satisfied, reversal is warranted only if the error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. *Id.* at 763-764 (quotation marks and citation omitted).

Defendant argues that the admission of testimony about the Crime Stoppers tip violated the Confrontation Clause. The Michigan and United States Constitutions both "guarantee a criminal defendant the right to confront the witnesses against him or her." *Putman*, 309 Mich App at 246 (citation omitted). "The Confrontation Clause does not, however, bar the use of out-of-court testimonial statements for purposes other than establishing the truth of the matter asserted." *Id.* Given the holdings in *Chambers*, 277 Mich App at 11, and *Putman*, 309 Mich App at 246, discussed earlier, there was no violation of the Confrontation Clause in admitting the testimony about the Crime Stoppers tip to explain the course of the police investigation.

Defendant also argues that, even assuming there was a nonhearsay purpose for admitting the testimony about the Crime Stoppers identification, that testimony was irrelevant and overly prejudicial. MRE 401 states that relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." MRE 403.

Both parties agree that *People v Wilkins*, 408 Mich 69; 288 NW2d 583 (1980), is a foundational case. In *Wilkins*, our Supreme Court reversed a conviction when the trial court admitted an out-of-court identification to explain the investigating officer's subsequent actions. *Id.* at 73-74. The *Wilkins* Court assumed that the tip was not hearsay, but held that the investigating officer's state of mind was not of consequence to the determination of the case, and thus the information was not relevant. *Id.* at 72-73. If the identification had any "marginal relevance as 'background' to the police officer's narrative, the testimony could have been limited to the statement that the police officer was responding to a tip" under MRE 105. *Wilkins*, 408 Mich at 73. Finally, even if it were relevant, the Court held that the unsworn statement "pointed to the defendant's guilt of the crime charged," and the prejudice "far outweighed its probative value." *Id.* at 74.

The tip in *Wilkins* was quite different from the tip in this case, both in terms of detail level, and in terms of the function it served. In *Wilkins*, the jury was told that an informant told police "at 8 o'clock p.m. that evening that a black male, late twenties, wearing a gray suit, would be in a gray Cadillac '75 sedan, license George Paul X-ray 233. He was supposed to be at 14009 Mendota, and that he's carrying a gun[.]" *Id.* at 71-72. Furthermore, the jury was told that the informant had seen the man carrying a gun earlier that day. *Id.* at 72. The crime at issue in *Wilkins* was

carrying a concealed weapon. The police then used the information in the tip to locate and follow the defendant, catch him in the act of throwing away a gun, and arrest him. *Id.* at 70-72.

In contrast, in this case, the tip disclosed to the jury consisted of the information that someone provided a name (later shown to be defendant's name) in response to requests for the public to identify the suspect in surveillance footage. The substance of the testimony about the tip was much less detailed, but did provide evidence that defendant committed the crime in question. In other words, just like in *Wilkins*, the tip "pointed to the defendant's guilt of the crime charged." *Id.* at 74. The substance of the information in this case did not need to be particularly detailed in order to clearly point to defendant's guilt because the tip connected defendant to video footage documenting the entire crime.

This Court has followed *Wilkins* in various cases, holding that admitting testimony about a tip merely to explain why police acted the way they did was erroneous, but sometimes holding the error did not require reversal in light of other evidence in the record. See *People v McAllister*, 241 Mich App 466, 470-471; 616 NW2d 203 (2000) (holding error in admitting out-of-court tip identifying defendant was not outcome-determinative because other witnesses identified the defendant), remanded in part on other grounds 465 Mich 884 (2001); *People v Cadle*, 204 Mich App 646, 652; 516 NW2d 520 (1994) (holding it was error to admit evidence about how the police learned of a conspiracy when the state of mind of the police was not relevant, but the error did not require reversal given other evidence in the record), overruled in part on other grounds by *People v Perry*, 460 Mich 55, 64-65; 594 NW2d 477 (1999). On the other hand, this Court did reverse in *People v Tanner*, 222 Mich App 626, 632-634; 564 NW2d 197 (1997), over the trial court's admission of an extremely damaging hearsay affidavit which stated, among other things, that an out-of-court informant reported having purchased cocaine from the defendant over 20 times.

The level of detail in the tip in this case is most like the one in *McAllister*. In that case, the trial court allowed "police testimony regarding receipt of an anonymous telephone call identifying defendant as the perpetrator of the assault." *McAllister*, 241 Mich App at 469. This Court held that the trial court erred by not limiting the content of the tip under MRE 105, as suggested in *Wilkins*. *McAllister*, 241 Mich App at 469-470. However, the Court found that, unlike in *Wilkins*, the prejudicial effect of the testimony did not far outweigh its probative value. The Court explained that in *McAllister*, three witnesses identified defendant, and went on to rule that reversal was not required, "especially where the erroneous admission was not outcome determinative." *McAllister*, 241 Mich App at 470-471, citing *Lukity*, 460 Mich at 495-496.

Under *Wilkins* and *McAllister*, we conclude that it was error to admit the information that someone had identified defendant as the suspect in the surveillance footage because this information pointed to defendant's guilt for the irrelevant or only marginally relevant purpose of explaining the course of the police investigation. However, the error in this case was not obvious because of the circumstances in which the information came out. In this case, the fact that someone identified defendant after viewing the surveillance footage was never stated outright. Rather, a store employee testified that "somebody gave us a name" after the surveillance footage was posted on Facebook. Then, a police officer testified that the employee called him "regarding possible leads in the case because of social media." The officer testified further that he was given a name, which he ran through a law enforcement database. When asked about the results of the search, the officer testified that "the subject that [he] ran" was defendant.

Because the out-of-court identification in this case came out in a piecemeal fashion, which placed less emphasis on the fact that an out-of-court identification occurred, and lessened its force, there was no obvious error, and plaintiff is not entitled to reversal. See *Carines*, 460 Mich at 763.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that trial counsel was ineffective for failing to object to the testimony about the Crime Stoppers tip on MRE 403 and Confrontation Clause grounds. In the ineffective assistance context, any factual findings by the trial court are reviewed for clear error, while this Court determines de novo whether "a particular act or omission fell below an objective standard of reasonableness . . . and prejudiced the defendant's trial." *People v Gioglio (On Remand)*, 296 Mich App 12, 19-20; 815 NW2d 589 (2012), vacated in part on other grounds, 493 Mich 864 (2012). Because defendant did not preserve his ineffective assistance claim by moving for a new trial or requesting a *Ginther*[1] hearing, our review is limited to errors apparent on the record. See *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000).

To prevail on a claim of ineffective assistance of counsel, "a defendant must show that (1) the lawyer's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for the lawyer's deficient performance, the result of the proceedings would have been different." *People v Anderson*, 322 Mich App 622, 628; 912 NW2d 607 (2018). Defendant must establish "the factual predicate for his claim of ineffective assistance of counsel." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Reviewing courts are required to " 'affirmatively entertain the range of possible' reasons that counsel may have had for proceeding as he or she did." *Gioglio*, 296 Mich App at 22 (citation omitted).

Defendant has not shown that his trial counsel was ineffective. First, "the Confrontation Clause does not bar the use of out-of-court testimonial statements for purposes other than establishing the truth of the matter asserted." *Chambers*, 277 Mich App at 10-11. Under *Chambers*, *id.*, and *Putman*, 309 Mich App at 246, there was no violation of the Confrontation Clause in admitting the disputed testimony to explain the course of the police investigation. As such, an objection would have been futile, and failing to make a futile objection is not ineffective. See *Chambers*, 277 Mich App at 11.

With regard to an objection under MRE 403, trial counsel could have made the strategic choice to focus on a single basis for objection initially, rather than diluting the force of the objection by naming multiple bases. See *Gioglio*, 296 Mich App at 22 (noting that reviewing courts are required to " 'affirmatively entertain the range of possible' reasons that counsel may have had for proceeding as he or she did") (citation omitted). The objection on the basis of hearsay was partially successful, in that the trial court cautioned the prosecution not to go any farther in its questions about the Crime Stoppers identification. After the trial court's admonition, the police officer testifying about the investigation appears to have carefully avoided naming defendant in connection with the social media tip until it became necessary to explain the information he learned from running defendant's name through a law enforcement database. Trial counsel could have

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

thought that the hearsay objection achieved as much as could be hoped for, and that further objections would backfire by focusing the jury's attention on the out-of-court identification. See *People v Randolph*, 502 Mich 1, 12; 917 NW2d 249 (2018) (noting that it is not ineffective for an attorney to forgo objecting to even an obvious error if there is a valid strategic reason for the attorney's choice). If trial counsel had no valid strategic reason for the failure to object, it was incumbent on defendant to establish "the factual predicate" to that effect, *Hoag*, 460 Mich at 6, and he has failed to do so.

Additionally, defendant has not established prejudice. Given that defendant's finger and palm prints were found on the garbage bag used during the break-in, and the fact that the jury had the chance to compare defendant's appearance with the partial image of the suspect on the surveillance footage, it is unlikely that the outcome would have been different if all reference to the Crime Stoppers tip had been excluded. See *Anderson*, 322 Mich App at 628.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that he is entitled to reversal because there was insufficient evidence for the jury to rationally determine that defendant was the perpetrator of the breaking and entering in question. Specifically, defendant argues that finger and palm prints found on the garbage bag at the scene were the only competent evidence linking defendant to the crime, and they are insufficient to support the verdict on their own. We disagree.

This Court reviews a defendant's challenge to the sufficiency of the evidence de novo. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). This Court "must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). This Court must "draw all reasonable inferences" in support of the verdict and must not interfere with the jury's power to "determine the weight to be accorded those inferences." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (citation omitted).

The elements of breaking and entering with intent to commit larceny are "(1) the defendant broke into a building, (2) the defendant entered the building, and (3) at the time of the breaking and entering, the defendant intended to commit a larceny therein." *People v Toole*, 227 Mich App 656, 658; 576 NW2d 441 (1998). Additionally, "[i]dentity is an element of every offense." *People v Bass*, 317 Mich App 241, 263; 893 NW2d 140 (2016) (citation omitted). Defendant disputes only the sufficiency of the evidence on identity. Identity can be proven through circumstantial evidence. *Id.* at 264; see also *People v Jolly*, 442 Mich 458, 466; 502 NW2d 177 (1993) ("Circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of a crime.").

Defendant relies heavily on *People v Ware*, 12 Mich App 512, 515; 163 NW2d 250 (1968), in which this Court stated that, as a general rule, "[t]o warrant a conviction, the fingerprints corresponding to those of the accused must have been found in the place where the crime was committed under such circumstances that they could only have been impressed at the time when the crime was committed." In *Ware*, the fingerprint in question was found on glass broken during a break-in at a bar. The bar operator testified that he had never seen the defendant in his bar. *Id.*

at 514. This Court found that the "circumstances surrounding the discovery of defendant's fingerprint sufficiently support[ed] the jury's verdict of guilty." *Id.* at 515.

Defendant's reliance on *Ware* is misplaced because *Ware* itself did not require absolute certainty about the circumstance in which the fingerprint in that case was left. While it was highly likely that the fingerprint on the broken glass in *Ware* was left during the break-in, it was certainly *possible* that it was left innocently before the break-in. The prints found on the garbage bag used during the break-in in the present case are even more likely to have been left during commission of the crime than was the fingerprint in *Ware*.

Moreover, the prints in this case were not the only evidence linking defendant to the crime. Defendant owned a 1988 Ford Ranger pickup truck, and the surveillance footage clearly showed a pickup truck which resembled a Ford Ranger. The jury saw the surveillance footage, which showed the suspect's build and several incomplete views of the suspect's face. The jury was able to compare these images to defendant. There was also testimony that the suspect truck turned onto I-75 northbound after the break-in, and that this would have been the fastest way to return to defendant's home in Dearborn. It is for "the jury alone to listen to testimony, weigh the evidence and decide the questions of fact." *People v Hardiman*, 466 Mich 417, 431; 646 NW2d 158 (2002) (citation omitted). A jury is permitted to consider all evidence with "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable" and draw reasonable inferences from it. *Id.* at 428-429 (citation omitted). The jury could properly consider the evidence of defendant's vehicle, the direction the suspect fled after the break-in, and the footage of the suspect. With this evidence alongside the finger and palm print evidence, a rational fact-finder could conclude beyond a reasonable doubt that defendant was the perpetrator of the break-in. See *Wolfe*, 440 Mich at 515.

## III. RESTITUTION

Finally, defendant argues resentencing is required to correct the court's restitution order because the amount of restitution was disputed, and the trial court did not hold an evidentiary hearing or make factual findings on the record. This Court reviews a trial court's restitution order for an abuse of discretion, *People v Byard*, 265 Mich App 510, 511; 696 NW2d 783 (2005), and its findings of fact for clear error. *People v Fawaz*, 299 Mich App 55, 64; 829 NW2d 259 (2012).

Defendant does not dispute the fact that the Sunoco station was entitled to restitution. Only the amount of restitution is at issue. MCL 780.767(4) states: "Any dispute as to the proper amount or type of restitution shall be resolved by the court by a preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the prosecuting attorney." This Court has held that when there is a dispute about the amount of restitution, MCL 780.767(4) requires a formal evidentiary hearing. *People v Avignone*, 198 Mich App 419, 424; 499 NW2d 376 (1993) (discussing an older version of MCL 780.767(4), which also required evidence of a defendant's ability to pay). A dispute on the amount of restitution also "triggers the need to resolve the dispute by a preponderance of the evidence," and the need for findings on the record. See *People v Grant*, 455 Mich 221, 243; 565 NW2d 389 (1997).

The Michigan Supreme Court has made it clear that "[i]t is incumbent on the defendant to make a proper objection and request an evidentiary hearing. Absent such objection, the court is

not required to order, sua sponte, an evidentiary proceeding to determine the proper amount of restitution due." *People v Gahan*, 456 Mich 264, 276 n 17; 571 NW2d 503 (1997), overruled in part on other ground by *People v McKinley*, 496 Mich 410; 852 NW2d 770 (2014). "A judge is entitled to rely on the information in the presentence report, which is presumed to be accurate unless the defendant effectively challenges the accuracy of the factual information." *Grant*, 455 Mich at 233-234 (footnotes omitted).

Defendant in this case did object to the amount of restitution, specifically arguing that the number of cigarette packs reported stolen was too high. However, defendant did not request an evidentiary hearing. In fact, the basis for defendant's argument at the sentencing hearing was that the video evidence from trial showed that fewer than 400 packs of cigarettes had been taken. Defendant specifically referred to the fact that the trial court had watched the video evidence at trial. This statement could be taken to imply that no hearing was necessary because the trial court could assess for itself whether the video evidence reflected a loss of 400 cigarette packs.

The trial court addressed the dispute regarding the amount of restitution by stating, "I think the evidence did show as well as the affidavit by the owners and managers of the gas station as to the correct amount of restitution." The trial court's reference to an affidavit was a mischaracterization of a Business Impact Statement submitted by the Sunoco station. The Statement was not notarized and did not contain any particular representations about its truthfulness.

Even if defendant waived his request for a hearing by implying that the trial court had all the necessary information, he did not waive the trial court's duty to make findings by a preponderance of the evidence supporting the amount of restitution. It is unclear to this Court whether the trial court properly exercised its discretion in this case by holding the prosecutor to its burden of proof under MCL 780.767(4) and according the "Business Impact Statement" appropriate weight given that it was not an affidavit. As such remand is warranted so that the trial court can make clear factual findings on the record regarding the proper amount of restitution as established by a preponderance of the evidence. The trial court may determine in the first instance whether an additional evidentiary hearing is required. See *People v Tyler*, 188 Mich App 83, 90; 468 NW2d 537 (1991) (holding that the trial court abused its discretion when the record did not show the basis for its determination on a disputed restitution amount).

We affirm defendant's conviction and remand only for further proceedings on the issue of restitution. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola